**Sandra L. RUTHERFORD,
Plaintiff–Appellant,**

v.

**TENNESSEE FARMERS MUTUAL
INSURANCE COMPANY,
Defendant–Appellee.**

Supreme Court of Tennessee.

Dec. 1, 1980.

John S. Porter, Burch, Porter & Johnson, Memphis, for plaintiff–appellant.

Don G. Owens, Jr., Memphis (Don G. Owens, III, Memphis, of counsel), for defendant–appellee.

OPINION

HARBISON, Justice.

This case involves a claim by an insured against her insurance carrier under the "underinsured motorist" provisions of her automobile insurance policy. The trial court allowed recovery, holding that the insurance carrier was not entitled to rely upon certain exclusionary provisions of the policy. The Court of Appeals reversed and dismissed, finding that the evidence preponderated against the factual conclusions of the trial judge. From our review of the record, we are unable to so conclude, and accordingly we reinstate the judgment of the trial court.

The insurance carrier offered no witnesses. The case turns upon undisputed facts and inferences properly to be drawn therefrom.

Appellant held an automobile insurance policy with appellee which was in effect when she was seriously injured in an accident on August 26, 1976. Her automobile was struck by a vehicle being driven by Louis Yancey. There has never been any question but that Mr. Yancey was responsible for the accident and that the injuries sustained by the insured were such as to entitle her to at least $50,000 in damages. Mr. Yancey had liability insurance with Allstate Insurance Company with limits of $10,000 per person, the minimum amount prescribed by the state Financial Responsibility Law, T.C.A. § 55–12–107.

In her policy with appellee, appellant carried liability insurance with limits of $50,000 per person, in addition to insurance for property damage, medical expenses, collision and comprehensive coverage. Her policy also provided uninsured motor vehicle coverage as contemplated by T.C.A. § 56–7–1201 with limits of $50,000 per person.

Within the provisions of her uninsured motorist coverage appellant was also provided with "underinsured motorist" insurance as required by a 1974 amendment to the foregoing statute. This coverage insured her against loss from bodily injuries inflicted by the operator of

"a motor vehicle with automobile liability insurance limits less than the limits of the uninsured motor vehicle coverage carried by [the] insured under this policy . . . ."

Appellant promptly notified appellee of the accident. She retained counsel, and he contacted both appellee and the liability carrier for Mr. Yancey. It developed that Mr. Yancey was an elderly individual living on Social Security with no substantial assets or ability to satisfy a judgment in excess of the insurance limits of his policy with Allstate. Counsel for appellant notified Allstate of the nature and extent of the injuries which she had sustained and entered into negotiations with that company for the settlement of her claim. He was advised of the policy limits by Allstate on October 28, 1976.

On the following day counsel for appellant wrote to a representative of appellee, advising him of the serious nature of appellant's injuries and of his opinion that Mr. Yancey had insufficient insurance adequately to compensate appellant. At that time he apparently had not seen appellant's policy, and he requested information from appellee as to whether the policy provided for "underinsured" coverage.

The representative of appellee called counsel four days later and gave the rather unusual reply that he could not furnish information to appellant regarding her coverage unless and until she came by his office and gave a statement concerning the accident. Appellant's counsel promptly advised appellant that she should cooperate with her carrier and should give it the requested information. She did this on November 5, 1976.

Seven days later, on November 12, 1976, counsel for appellant still had not heard from the insurance carrier. He again wrote to appellee and stated that he had independently learned that appellant did have underinsured motorist coverage. He stated that the insured was making a formal claim against appellee for the difference between any amount recovered from Mr. Yancey and appellee's limits of $50,000. He stated that if appellee needed any further information from counsel, it should so advise him.

Four days later, on November 16, 1976, appellee for the first time notified appellant, through her counsel, that it did in fact afford underinsured motorist coverage with limits of $50,000. This information was given only ten days short of three months following the date of the accident and at a time when appellee knew that appellant and her counsel were actively engaged in negotiations with the responsible tort–feasor. Neither orally nor in writing did the insurer advise its insured or her counsel of any of the other policy provisions, exceptions or exclusions which it deemed pertinent, nor did appellee in any way object to the pursuit of the third–party claim by appellant, insofar as the record discloses.

Accordingly, counsel for appellant made a formal offer to representatives of Allstate on November 22, 1976, to settle appellant's claim against Mr. Yancey for the Allstate policy limits, predicated upon his understanding that Mr. Yancey had no other insurance available. On that same day he wrote to appellee, enclosing a list of appellant's medical expenses and lost wages, together with estimates of cost of future medical treatment. In this letter counsel advised appellee that he expected in the near future to receive $10,000 from Allstate, reducing appellee's liability to $40,000. The letter concluded with a formal demand upon appellee for the balance of its coverage in that amount.

On the following day a local representative of appellee advised counsel for appellant that it was forwarding all of the material on the claim to the company's home office "for evaluation of our position" and stated that he would further communicate with counsel concerning the claim.

Three weeks passed with no further word from appellee, insofar as the record discloses. On December 14, 1976, counsel for appellant wrote to appellee once more, renewing his demand for $40,000 and advising that he had received the policy limits from Allstate. He requested that he be advised of the company's decision not later than December 23, 1976.

As a condition of the acceptance of the funds paid by Allstate, appellant, at the request and upon advice of her counsel, signed on December 17, 1976, a document releasing Mr. Yancey from all further liability in connection with the accident.

During the week of December 20, 1976, a representative of appellee contacted counsel for appellant by telephone and stated that before he would authorize payment on the claim, appellee would have to have another personal interview with appellant to inspect her injuries more closely. During all of this time there was never any indication from appellee, either orally or by correspondence, that it in any way objected to the handling of the third–party claim by appellant and her attorney.

Having heard nothing further from appellee, counsel for appellant on December 30, 1976, again wrote to the company, reminding its representative of their telephone conversation during the week of December 20. He stated that appellee was free to make an appointment to visit with appellant and to confer with her at any mutually convenient time. He stated, however, that he wished either to have the claim settled or to file suit before January 10, 1977. On January 7, 1977, a representative of appellee wrote to counsel for appellant stating that due to "recent developments" appellee had "some real legal problems regarding Ms. Rutherford's policy coverages." The letter did not specify what these problems were and simply advised that a copy of appellee's file was being forwarded to local counsel in Memphis.

Immediately counsel for appellant contacted appellee's counsel and stated that this was the first notice that he or appellant had ever received regarding any coverage questions.

Apparently a conference was held between counsel on January 25, 1977. At that time counsel for appellant was advised that appellee was relying upon an exclusion in the uninsured motor vehicle coverage to the effect that the insurance did not apply to bodily injury or other damages with respect to which the insured had, without written consent of the company, made settlement with any person legally liable therefor.

Insofar as the record discloses, this was the first time that the provisions of this exclusion had been invoked by appellee in all of the course of dealing between it and its insured or her counsel. This was five months following the date of the accident and two and one–half months after counsel for appellant had notified appellee in writing of her claim and nearly three months from the time appellee had been advised that the tort–feasor had only minimum limits of liability insurance.

■ Under these circumstances the trial court held that appellee had waived the provisions requiring its written consent to a third–party settlement, and we are of the opinion that the evidence fully supports this conclusion. To say the least, appellee acquiesced in its insured's pursuit of the third party. The trial court gave appellee credit, dollar for dollar, for the amount of the third–party recovery against appellee's contractual liability to its insured. The record shows clearly that the insured and her counsel did not knowingly or intentionally violate any policy provisions, and they most certainly did not intend to waive the coverage which appellant had purchased.

It is insisted by appellee that the third–party settlement impaired or destroyed its right of subrogation against the third–party tort–feasor. The undisputed facts in the record show that there was no such impairment in fact, and any interference with the right of subrogation in this case was theoretical indeed.

■ There can be no question, in general, of the validity of exclusionary provisions such as that relied upon by the insurance

846

carrier in this case. However, it is well settled that such provisions can be waived, or the carrier can be precluded from reliance thereon, as a result of a course of dealings between it and its insured. *See Crumley v. Travelers Indemnity Co.*, 225 Tenn. 667, 475 S.W.2d 654 (1972). Whether there was such a waiver or course of conduct depends, in the last analysis, upon all of the facts and circumstances of each case. As previously stated, we are of the opinion that the evidence does not preponderate against the finding of the trial judge in this regard.

In the recent case of *M.F.A. Mutual Insurance Co. v. Flint*, 574 S.W.2d 718 (Tenn. 1978), this Court dealt in some detail with the duty owed by an insurance carrier to its own insured under uninsured motorist policy provisions. That same duty is owed, of course, with respect to "underinsured motorist" insurance. During a period of nearly five months after her accident and serious injuries, appellant was never once cautioned by her insurance carrier or its representatives not to pursue her third–party claim, nor was any question made concerning the investigation and findings of her counsel that the insured tort–feasor had no independent assets out of which to satisfy a claim. Had appellee desired to settle directly with appellant and pursue the third–party claim independently, it surely could have so notified appellant or her counsel and could have called attention to the policy provisions which it now relies upon. Appellee insists that appellant and her attorney did not rely upon or invoke principles of waiver of the policy provisions during the period of negotiations. However, it appears from the record that neither appellee nor its representatives relied upon the exclusionary provisions and that their reliance thereon was an afterthought which was never once revealed to the insured or her attorney until long after the third–party settlement had been effected with the knowledge and with at least tacit approval of appellee.

Under these circumstances we are of the opinion that the trial judge correctly held appellee liable to appellant for the difference between the third–party coverage and the underinsured motorist limits. The judgment of the Court of Appeals to the contrary is set aside, the judgment of the trial court is reinstated, and the cause is remanded to that court for enforcement of the judgment and for any other orders which may be necessary. All costs are taxed to appellee.

BROCK, C. J., and FONES, COOPER and DROWOTA, JJ., concur.