IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 13, 2002 Session

## PEGGY GASTON v. TENNESSEE FARMERS MUTUAL INSURANCE COMPANY

**Appeal from the Circuit Court for McMinn County**
**No. 21,673 Lawrence H. Puckett, Judge**

**FILED OCTOBER 28, 2002**

**No. E2001-01487-COA-R3-CV**

This appeal from the Circuit Court of McMinn County questions whether the Trial Court erred in granting a directed verdict in favor of Tennessee Farmers Mutual Insurance Company because it refused to pay its policyholder, Peggy Gaston, under the uninsured motorist provision of her policy which covered Peggy Gaston. We vacate and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated;
Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and J. MICHAEL SWINEY, JJ., joined.

Larry B. Nolen, Athens, Tennessee, for the Appellant, Peggy Gaston.

H. Chris Trew, Athens, Tennessee, for the Appellee, Tennessee Farmers Mutual Insurance Company.

**OPINION**

The genesis of this appeal is an automobile accident occurring on June 10, 1996, when the automobile owned and operated by Peggy Gaston collided with an automobile operated by Stephanie Wise and owned by her father, Timothy Wise. According to Mrs. Gaston's testimony, Ms. Wise was driving on the wrong side of the road and struck Mrs. Gaston's automobile causing substantial property damage to her 1996 Honda Civic and significant bodily injury to Mrs. Gaston. At the time of the accident, Mrs. Gaston was insured by Tennessee Farmers Mutual Insurance Company (hereinafter referred to as "Tennessee Farmers"), wherein she carried liability insurance limits of $50,000 per person, in addition to insurance for property damage, medical payments, comprehensive and collision coverage. Mrs. Gaston's policy also provided uninsured and underinsured motor vehicle coverage with limits of $50,000 per person. Ms. Wise was insured by CNL Insurance

America Company (hereinafter referred to as "CNL") with policy limits of $10,000 property damage and $25,000 bodily injury.

On June 11, 1996, Mrs. Gaston's daughter, Dana Watson, notified Tennessee Farmers of the accident and of the seriousness of her mother's injuries. Shortly after the accident, Mr. Gaston visited David Brown, Senior Claims Adjustor for Tennessee Farmers, to inquire as to the insurance coverage available to Mrs. Gaston. According to testimony by Mr. Gaston, he was informed that Mrs. Gaston had $25,000 available to her through her underinsured coverage in addition to the $25,000 available from Ms. Wise's bodily injury coverage through CNL for a total of $50,000.

An appraisal of Mrs. Gaston's automobile was made on June 17, 1996. It was determined that Mrs. Gaston's automobile was a total loss and Tennessee Farmers paid Mrs. Gaston $15,221.25[1] for property damage to her car. Mrs. Gaston testified that her medical bills exceeded $30,000. On August 19, 1996, Mr. and Mrs. Gaston wrote the following letter to CNL, forwarding copies of Mrs. Gaston's medical bills and requesting payment of the $25,000 insurance coverage. The Gastons mailed a copy of the correspondence to Mr. Brown. Mr. Brown testified that he received the letter and that he did not contact CNL nor the Gastons regarding the correspondence as he was waiting for the Gastons to notify him of any response they received from CNL:

August 19, 1996


Betty Kinnas
CNL Insurance America
P O Box 6097
Macon, GA 31208

REF: Claim Number 10638D


Enclosed you will find copies of the bills received to date for the injuries received by Peggy Gaston in the automobile accident on June 10, 1996, involving the liable party which you insure, Stephanie Wise (Tim Wise).

Please let us know, as soon as possible, the status of this claim and when we might expect payment of your clients $25,000.00 insurance coverage.

Sincerely,

---

[1] On June 25, 1996, Tennessee Farmers paid Mrs. Gaston $15,200.25, and on September 16, 1996, Tennessee Farmers, apparently having collected the full property damage claim from CNL, reimbursed Mrs. Gaston her $200.00 deductible for a total of $15,400.25.

/s/ Peggy & Dane Gaston
Peggy & Dane Gaston

Enclosures

cc: David Brown - Tennessee Farmers Mutual Insurance Co.

On September 30, 1996, following their receipt of $25,000 from CNL, Mr. and Mrs. Gaston signed a "RELEASE AND SETTLEMENT OF CLAIM," which did not release Stephanie Wise, but did release her father, Timothy Wise and CNL.[2] In November 1996, Mr. and Mrs. Gaston met with Mr. Brown in his office at which time they became aware that Tennessee Farmers was denying their underinsured claim. On May 8, 1997, Mr. and Mrs. Gaston filed suit against Tennessee Farmers. Following the close of proof by the Gastons at trial, Tennessee Farmers moved for a directed verdict which was granted by the Trial Court on the grounds that the Gastons had violated certain policy provisions by a release they signed without the written consent of Tennessee Farmers.

Mr. and Mrs. Gaston raise for our review the following three issues:

### First Issue

Whether the trial court properly dismissed with full prejudice insured Peggy Gaston's suit against her insurance carrier, Tennessee Farmers of which claim was based upon the failure of Tennessee Farmers to pay Peggy Gaston pursuant to her underinsured and medical payment provisions of her policy.

### Second Issue

Whether the Trial Judge should have recused himself from presiding over this case as he was personally insured by Tennessee Farmers.

### Third Issue

Whether the Trial Court erred in refusing to allow Ness Judson, Peggy Gaston's expert, to testify.

The standard for our review of the propriety of the Trial Court's granting a directed verdict is enunciated by our Supreme Court in the case of City of Columbia v. C.F.W. Const. Co., 557 S.W.2d 734, 740, (Tenn.1977), as follows:

---

[2] See Appendix.

Motions for dismissal in non-jury cases under Rule 41.-02(2), Tennessee Rules of Civil Procedure, and motions for directed verdicts in jury cases under Rule 50, Tennessee Rules of Civil Procedure, are somewhat similar, but, there is a fundamental difference between the two motions, in that, in the jury case, the judge is not the trier of facts while in the non-jury case he is the trier of the facts. In the jury case he must consider the evidence most favorably for the plaintiff, allow all reasonable inferences in plaintiff's favor and disregard all counteracting evidence, and, so considered, if there is any material evidence to support a verdict for plaintiff, he must deny the motion.

The automobile policy issued to Mrs. Gaston contains relevant provisions as follows:

"Tennessee Farmers Mutual Insurance Company, Columbia, Tennessee, agrees to insure you according to the terms and conditions of this policy...."

By accepting this policy, you agree that:

1....
2....
3...
4. This policy contains all of the agreements and understandings between you and us or any of our agents."

"Additional Duties under Uninsured Motorist Coverage

In addition, persons and entities seeking coverage under Uninsured Motorist Coverage must:

1...
2...
3. serve upon **us** in the manner prescribed by law copies of all suit papers, if suit is brought."

"WHAT IS COVERED

We will pay only compensatory damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of

1. Bodily injury sustained by a covered person;"

**"WHAT IS NOT COVERED**

We do not provide uninsured coverage for property damage or bodily injury sustained by any person or entity:

1...
2. If that person or entity or the legal representative of that person settles the bodily injury or property damage claim without our written consent."

"When we make payments to any person or entity under this uninsured motorist coverage, that person's or entity's rights of recovery from any other person or entity become ours up to the amount paid. This includes the proceeds recoverable from the assets of an insolvent insurer."

## "LEGAL ACTION AGAINST US

No legal action may be brought against us until there has been full compliance with all the terms of this policy.

## "OUR RIGHT TO RECOVER PAYMENT

If we make a payment under this policy and the person or entity to or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right. That person or entity shall do whatever is necessary to enable us to exercise our rights, including but not limited to (1) cooperating fully with us in the prosecution of claims and suits (2) procuring and furnishing all papers and documents necessary in each proceeding and (3) attending Court and testify if we deem necessary, and shall do nothing after loss to prejudice our rights.

If we make a payment under this policy and the person or entity to or for whom payment is made recovers damages from another, that person or entity shall hold in trust for us the proceeds of the recovery and shall reimburse us for our payment."

We believe the case of Rutherford v. Tennessee Farmers Mut. Ins. Co., 608 S.W.2d 843 (Tenn. 1980), is dispositive of the major question raised in this appeal. In that case, wherein the facts are strikingly similar, to the ones in the case at bar, our Supreme Court found that the insurance carrier had "waived the provisions requiring its written consent to a third-party settlement."

Rutherford did find that the tort-feasor was judgment proof--or more accurately execution proof--and, consequently, the insurance carrier had not been prejudiced. Rutherford suggests that if the insurer could show that the released tort-feasor was financially able to respond to a judgment the result might well have been different.

It would appear that in the case at bar that neither Mr. Wise nor his daughter had resources to pay any judgment rendered in that Tennessee Farmers, which was subrogated to the property damage claim on June 25, 1996, made no effort to bring suit against them prior to the release being signed on September 30, 1996.

As to Tennessee Farmers' insistence that it was prejudiced, we again point out that only Mr. Wise and CNL were released and the party operating the car, Mr. Wise's daughter, was not. Thus, Tennessee Farmers was free to pursue its subrogation claim against the daughter. Additionally, there is no concrete proof that the vehicle driven by the daughter was a family purpose vehicle, or that the doctrine of *respondeat superior* obtained. However, we note that under T.C.A. 55-10-311, proof of ownership of a vehicle is "prima facie evidence that the vehicle was then and there being operated by the owner, or by the owner's servant for the owner's use and benefit and within the scope of the servant's employment."

Notwithstanding the foregoing code section, we believe it may be inferred that Mr. Wise was not financially able to pay any judgment rendered against him.

Finally, as to prejudice, as noted in the case of American Justice Ins. v. Hutchison, 15 S.W.3d 811 (Tenn. 2000), involving failure to give notice of an accident, our Supreme Court held that although prejudice must be shown, a rebuttable presumption arises that an insurer has been prejudiced. Assuming that the rule of Hutchison obtains in this case, given the fact that no release was given as far as his daughter was concerned, and the further fact that, as already noted, no effort was made by Tennessee Farmers to collect approximately $5000 it paid for property damage over and above the amount paid by CNL, any presumption that might have arisen has been rebutted given our standard of review as to directed verdicts. Moreover, as to this point, the question of prejudice may be fully explored at trial upon remand.

We also believe that Rutherford answers the contention of Tennessee Farmers that no judgment could be rendered against it because the tort-feasor had not been sued. It is true that Rutherford did not speak to this point, but does affirm a judgment against Tennessee Farmers under the underinsured motorist coverage when the tort-feasor was the only defendant sued.[3] Moreover, it appears that this is a suit for breach of contract rather than one under the provisions of our underinsured motorist statutes.

As to the testimony excluded, which was that of an independent insurance adjustor regarding the duty and responsibilities of Mr. Brown, under the circumstances of this case we do not believe that the Trial Court, given the wide discretion accorded it as to admission of evidence, especially expert testimony, was in error in excluding this testimony. We also suggest that for the same reason

---

[3] Rutherford was decided December 1, 1980, some eight and one-half years after Glover v. Tennessee Farmers Mutual Insurance Co., 468 S.W.2d 727 (Tenn. 1971), construed our uninsured and underinsured automobile statutes to preclude a direct action against the insurer.

we would not have found error had the testimony been admitted.  Otis v. Cambridge Mut. Fire Ins. Co., 850 S.W.2d 439 (Tenn. 1992).

We also note that under Tennessee law there is in every contract an implied duty of good faith and fair dealing.  Wallace v. National Bank of Commerce, 938 S.W.2d 684 (Tenn. 1996); Brooks v. Networks of Chattanooga, Inc., 946 S.W.2d 321 (Tenn. Ct. App. 1996).

Given the letter above set out, copy of which went to Mr. Brown, the representative of Tennessee Farmers, a reasonable inference can be drawn that the settlement with the tort-feasor was imminent, and if accomplished without the written consent of Tennessee Farmers, Tennessee Farmers would not be liable for payment of any underinsured motorist coverage.

We believe a jury could find, under proper instructions from the Court, that the implied covenants above mentioned were breached by Mr. Brown remaining silent with the expectation that the case would be settled without the written consent required in the policy.  We accordingly find that granting a directed verdict under the record presented was error.

As to the question of the Trial Judge recusing himself, the record discloses that during the selection of the jury the Court excused any prospective juror who carried insurance with Tennessee Farmers.  During the course of the trial the Trial Judge apparently reflected upon his actions as to Tennessee Farmers and felt it necessary to advise counsel for the parties that he likewise was insured by Tennessee Farmers.  He then asked whether there was any problem with his continuing the trial.  Both counsel answered in the negative.  In light of this we find that error incident thereto, if any, was waived by Mrs. Gaston's counsel.

With regard to the allegation in the complaint that Tennessee Farmers violated the Tennessee Consumer Protection Act, counsel for Tennessee Farmers argues that the circumstances of this case do not bring it within the protection of this Act, which provides in part the following:

> **47-18-102. Purposes.** --  The provisions of this part shall be liberally construed to promote the following policies:
>     (1) To simplify, clarify, and modernize state law governing the protection of the consuming public and to conform these laws with existing consumer protection policies;
>     (2) To protect consumers and legitimate business enterprises from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce in part or wholly within this state;
>     (3) To encourage and promote the development of fair consumer practices.
>
> **47-18-103. Definitions.** -- As used in this part, unless the context otherwise requires:
>
>     . . . .

(2) "Consumer" means any natural person who seeks or acquires by purchase, rent, lease, assignment, award by chance, or other disposition, any goods, services, or property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated or any person who purchases or to whom is offered for sale a franchise or distributorship agreement or any similar type of business opportunity.

While this argument is appealing, our Supreme Court, in dealing with a similar factual situation wherein the insurance company refused to pay a fire loss as to the policyholder's rental property, held that such an action was appropriate under the Tennessee Consumer Protection Act. Myint v. Allstate Ins. Co., 970 S.W.2d 920 (Tenn. 1998).

For the foregoing reasons the judgment of the Trial Court is vacated and the cause remanded for further proceedings not inconsistent with this opinion. Costs of appeal are adjudged against Tennessee Farmers Mutual Insurance Company.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE