IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
September 3, 2003 Session

## PEGGY GASTON v. TENNESSEE FARMERS
## MUTUAL INSURANCE COMPANY

**Appeal by Permission from the Court of Appeals**
**Circuit Court for McMinn County**
**No. 21,673     Lawrence H. Puckett, Judge**

_____

**No. E2001-01487-SC-R11-CV - Filed November 7, 2003**

_____

We granted review to decide whether there was sufficient evidence to require a jury to determine whether the insurer waived compliance with insurance policy provisions requiring the insurer's consent to a third-party settlement by its insured. After the insurance company denied her claim, the insured filed a complaint alleging breach of contract, violation of the Tennessee Consumer Protection Act, and bad faith. The trial court directed a verdict for the insurance company, finding that the insured failed to comply with the subrogation provisions of her policy and that the insurance company did not waive these provisions. The Court of Appeals reversed. After reviewing the record and applicable authority, we agree with the Court of Appeals that there was evidence from which a reasonable jury could find that the insurance company waived the subrogation provisions. We also conclude that the insured was not required to demonstrate that the insurance company had not been prejudiced and that the trial court improperly directed verdicts on the insured's claims under the Tennessee Consumer Protection Act and the bad faith statute. We therefore affirm the Court of Appeals' judgment and remand to the trial court for a new trial.

### Tenn. R. App. P. 11  Appeal by Permission; Judgment of the Court of Appeals Affirmed; Case Remanded to the Trial Court

E. RILEY ANDERSON, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

H. Chris Trew, Athens, Tennessee, for the Appellant, Tennessee Farmers Mutual Insurance Company.

Larry B. Nolen, Athens, Tennessee, for the Appellee, Peggy Gaston.

# OPINION

## BACKGROUND

On June 10, 1996, the plaintiff, Peggy Gaston, then age 59, was driving her 1996 Honda Civic automobile in a southerly direction on Highway 411 in Englewood, Tennessee, when she was struck head-on by a 1987 Ford Mustang driven by sixteen-year-old Stephanie Wise and owned by her father, Tim Wise. The undisputed evidence at trial was that Stephanie Wise was driving on the wrong side of the road at the time she collided with Gaston's vehicle. As a result of the accident, Peggy Gaston suffered serious bodily injuries and incurred medical bills exceeding $30,000. Her automobile, valued at $15,401.25, was a total loss.

Gaston and her husband, Dane Gaston, were insured by the defendant, Tennessee Farmers Mutual Insurance Company ("Tennessee Farmers"). Their policy had the following limits: $50,000 bodily injury liability per person; $50,000 property damage per accident; $50,000 uninsured/under-insured for property damage; $5,000 medical payments; and $50,000 uninsured/under-insured for bodily injury each person, up to $100,000 per accident. The policy stated:

### WHAT IS NOT COVERED

> We do not provide uninsured coverage for property damage or bodily injury sustained by any person or entity:
>
> * * *
>
> If that person or entity or the legal representative of that person settles the bodily injury or property damage claim without our written consent.

Tim Wise, the owner of the 1987 Ford Mustang that struck the Gastons' vehicle, had an automobile liability policy with CNL Insurance America Company ("CNL"), which provided coverage of $25,000 per person for bodily injury and $10,000 for property damage.

The day after the accident, June 11, 1996, Peggy Gaston's daughter, Dana Gaston Watson, reported the accident to David Brown, Tennessee Farmers' senior claims adjuster. Gaston's husband, Dane Gaston, also discussed the insurance coverage with Brown and the fact that there was no "stacking" of the CNL limits with Tennessee Farmers so that only $25,000 of under-insured coverage was available, plus $5,000 medical payments coverage. On June 25, 1996, Tennessee Farmers paid $15,201.25 to the Gastons for the total loss of their vehicle.

On August 19, 1996, the Gastons sent a demand letter to Betty Kinnas, a claims adjuster at CNL. The letter enclosed medical bills incurred by Peggy Gaston and requested payment of the

$25,000 coverage as soon as possible. A copy of the letter was sent to David Brown, the senior claims adjuster at Tennessee Farmers with whom they had been discussing the claim.

On September 1, 1996, Tennessee Farmers received $10,000 from CNL for the subrogation payment it had made to Peggy Gaston for the loss of her vehicle.[1]

On September 30, 1996, Peggy Gaston and CNL reached an agreement under which CNL paid its liability policy limits of $25,000 by payment of $13,000 directly to the University of Tennessee Medical Center and paying the balance of Tim Wise's liability coverage, $12,000, directly to Peggy Gaston. As part of the settlement, the Gastons executed a release with CNL and Tim Wise for Peggy Gaston's bodily injuries.

On November 7, 1996, the Gastons met with David Brown to discuss payment by Tennessee Farmers of the $25,000 under-insured motorist coverage available under their policy. As a result of the discussion, Brown learned that Peggy Gaston had settled her claim made on August 19, 1996, and had signed a release with CNL and Tim Wise. Brown then told the Gastons that Tennessee Farmers would not pay the under-insured motorist coverage afforded under the policy because the Gastons had breached the policy terms by settling with CNL without Tennessee Farmers' written permission.[2]

Peggy Gaston then filed suit alleging that Tennessee Farmers had breached the insurance contract by failing to pay her claim, had violated the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.* (2001 & Supp. 2003) ("TCPA"), and had acted in bad faith, <u>see</u> Tenn. Code Ann. § 56-7-105 (2000).

At a jury trial, Brown testified that he had received a copy of the August 19, 1996 demand letter to CNL, but that he did not contact the Gastons because he believed it would be more advisable to "wait until [he] heard back from Mr. or Mrs. Gaston." Brown also admitted that he knew the University of Tennessee Medical Center had a $13,000 lien against the Gastons for the medical services that had been rendered, that Peggy Gaston had suffered serious injuries from the accident in which liability was uncontested, that Peggy Gaston's medical bills were at least $25,000, that the Gastons would likely file a claim for the under-insured motorist coverage, and that Tennessee Farmers had exposure for the coverage. Neither Brown nor anyone else at Tennessee Farmers, however, contacted the Gastons. Instead, Brown testified that his duty as the Gastons' insurance adjuster was to "answer [insured's] questions when asked" and not "to explain every possibility of a policy or everything that may or may not go right or wrong with a case."

---

[1] The figure of $15,201.25 reflects the $200 deductible for property claims included in the Gastons' policy. This $200 was paid to Peggy Gaston upon Tennessee Farmers' receipt of the $10,000 subrogation payment from CNL. The $10,000 paid by CNL reflects the maximum of Tim Wise's policy for property damage.

[2] The record does not indicate that Tennessee Farmers attempted to recover the payment already made to Mrs. Gaston for her property damage claim.

After hearing the plaintiff's proof, the trial court directed a verdict for the defendant, Tennessee Farmers, finding that the plaintiff failed to produce material evidence that Tennessee Farmers had waived the terms of the policy. The trial court also directed verdicts and dismissed the plaintiff's claims under the TCPA and the bad faith statutory provisions.

The Court of Appeals reversed the judgment after concluding that the jury should have been allowed to consider whether Tennessee Farmers waived the subrogation provisions of the policy, and whether Tennessee Farmers violated the Tennessee Consumer Protection Act and the bad faith statute.

We granted Tennessee Farmers' application for permission to appeal.

## STANDARD OF REVIEW

In ruling on a motion for directed verdict, trial courts must take the strongest legitimate view of the evidence in favor of the non-moving party, construing all evidence in that party's favor and disregarding all countervailing evidence. Eaton v. McLain, 891 S.W.2d 587, 590 (Tenn. 1994). A court may grant the motion only if reasonable minds could reach only one conclusion from the evidence. Id. Appellate courts apply the same standard in reviewing the trial court's decision on a directed verdict. Sauls v. Evans, 635 S.W.2d 377, 379 (Tenn. 1982).

## ANALYSIS

### Breach of Insurance Contract and Waiver

The defendant, Tennessee Farmers, argues that it was not required to pay its policy benefits because the plaintiff, Peggy Gaston, breached the policy terms, which stated that there was no coverage "[i]f that person or entity or the legal representative of that person settles the bodily injury or property damage claim without our written consent." Gaston, however, contends that Tennessee Farmers' claims adjuster, David Brown, had discussed Tennessee Farmers' under-insured motorist coverage with them and knew that she had requested payment from CNL, *i.e.*, Tim Wise's insurance carrier, but that he did not contact her or warn her of the consequences of such a settlement. She argues that Tennessee Farmers therefore waived the policy's terms and that she was entitled to her Tennessee Farmers' policy benefits.

We begin our review by examining the basic principles of waiver, including "the long-standing rule in Tennessee that *any* contractual provision of a policy of insurance, whether part of an insuring, exclusionary, or forfeiture clause, may be waived by the acts, representations, or knowledge of the insurer's agent." Bill Brown Constr. Co. v. Glens Falls Ins. Co., 818 S.W.2d 1, 13 (Tenn. 1991) (emphasis in original); see also Rutherford v. Tennessee Farmers Mut. Ins. Co., 608 S.W.2d 843, 846 (Tenn. 1980). Indeed, this Court has specifically stated that

> [a] waiver is a voluntary relinquishment by a party of a known right.
> . . . "[I]t may be proved by express declaration; or by acts and
> declarations manifesting an intent and purpose not to claim the
> supposed advantage; or by a course of acts and conduct . . . ."

Chattem, Inc. v. Provident Life & Accident Ins. Co., 676 S.W.2d 953, 955 (Tenn. 1984) (quoting Baird v. Fidelity-Phoenix Fire Ins. Co., 162 S.W.2d 384, 389 (Tenn. 1942)). The burden of proof to establish waiver rests with the insured, Bill Brown Constr. Co., 818 S.W.2d at 13, and is a question of fact for the jury, see Carolyn B. Beasley Cotton Co. v. Ralph, 59 S.W.3d 110, 113 (Tenn. Ct. App. 2000), perm. app. denied, (Tenn. 2001) (quoting Koontz v. Fleming, 65 S.W.2d 821, 824 (Tenn. Ct. App. 1933)).

These familiar waiver principles were applied by this Court in Rutherford to facts very similar to the present case. The defendant, Tennessee Farmers, knew that its insured in Rutherford was negotiating a settlement with an under-insured motorist's insurance company, yet it did not intervene or warn the insured, who was represented by counsel, that her settlement would result in losing under-insured motorist coverage if she did not obtain Tennessee Farmers' written consent to settle the claim. Rutherford, 608 S.W.2d at 844-45. After the insured settled the claim with the other party's insurance company, the defendant denied coverage of the claim on the basis of a provision that prohibited the insured from settling without the written permission of the insurer. Id. at 845. We concluded that an insurer with knowledge that an insured is seeking a settlement with another insurance carrier may not fail to act and then seek to enforce exclusionary terms of a policy. Id. at 846. We also emphasized that an insurer could not decline to pay a claim based upon a policy exclusion in a case where the insurer's reliance on that policy provision appeared to be an afterthought. Id.

In our view, these principles are fully applicable in this case. The plaintiff, Peggy Gaston, established that a copy of the letter written to CNL on August 19, 1996, was sent to David Brown, an agent of Tennessee Farmers. The letter expressly asked a CNL claims adjuster, "Please let us know, as soon as possible . . . when we might expect payment of your clients [sic] $25,000.00 insurance coverage." David Brown acknowledged that he received the letter and that he understood the consequences of Peggy Gaston settling the claim directly with CNL. After having earlier discussed the under-insured coverage with the Gastons, and knowing that Peggy Gaston had substantial medical bills and serious injuries for which Tennessee Farmers had exposure on its coverage, Brown simply decided to wait to see what developed rather than inform Mrs. Gaston that she risked losing the coverage she had been paying for if she carried out her course of action. Neither Brown nor anyone else at Tennessee Farmers ever contacted the Gastons.

Accordingly, we believe that the evidence was sufficient for a reasonable jury to find that Tennessee Farmers waived its policy provision requiring written consent before its policyholder could settle with a third party. Although the Court of Appeals addressed the issue of prejudice along with waiver, its discussion of prejudice was based upon American Justice Insurance Reciprocal v. Hutchison, 15 S.W.3d 811 (Tenn. 2000). In that case, the question was the adequacy

of an insured's notice of a claim to the insurer.  Id. at 815.  Since notice is not at issue in the case at bar, we do not find American Justice or the analysis of prejudice relevant.  In any event, we agree with the Court of Appeals' conclusion that the trial court erred in granting a directed verdict.

## Direct Action Against the Insurer

Tennessee Farmers, relying on Tennessee Code Annotated section 56-7-1206 (2000), argues that the plaintiff was barred from bringing a direct action against it in these proceedings.  This provision, which is part of the Tennessee uninsured motorist statutory scheme, provides, in pertinent part:

> (a)  Any insured intending to rely on the coverage required by this part shall, if any action is instituted against the owner and operator of an uninsured motor vehicle, serve a copy of the process upon the insurance company issuing the policy in the manner prescribed by law, as though such insurance company were a party defendant.

Id.  Similarly, in Glover v. Tennessee Farmers Mutual Ins. Co., 468 S.W.2d 727, 728-29 (1971), former Tennessee Code Annotated section 56-1153 (which is virtually identical to present section 56-7-1206) was interpreted as a bar to direct action.  Gaston argues, however, that the statute does not prohibit a policyholder's recovery under the contractual terms of the insurance policy.

First, it is clear that plaintiff Gaston did not follow the procedure prescribed by this statute.  After settling with Tim Wise and his insurance company, CNL, for the limits under Wise's policy, Gaston sought payment from Tennessee Farmers under her under-insured motorist coverage; when Tennessee Farmers refused to pay the claim, Gaston brought this action directly against it.

This statute does not, however, end the analysis.  Indeed, this Court has noted that there are circumstances in which a direct action against an uninsured motorist carrier is appropriate.  In Bolin v. Tennessee Farmer's Mutual Ins. Co., 614 S.W.2d 566 (Tenn. 1981), for instance, we stated that "[i]t is obvious that under some circumstances an insurance carrier becomes subject to a claim under [section 1206] at a fairly late stage, or even after the conclusion, of litigation against the tortfeasor."  Id. at 568.  In that case, the insured did not discover the uninsured status of the tortfeasor until after the trial had already concluded; thus, the insured could not have included the insurer as a party defendant as required by statute.  Id. at 567-68.

Similarly, in Rutherford, a direct action was brought against an uninsured motorist carrier under circumstances much like those in the present case.  608 S.W.2d at 843.  In that case the insured settled a claim with another party's insurance company, and the insurer, which had known of the pending settlement, denied coverage of the claim on the basis of a subrogation provision that prohibited the insured from settling without obtaining the consent of the insurer.  Id. at 845.

Although the issue was not directly raised on appeal, it is clear that the insured was permitted to proceed in a direct action against the insurer in those circumstances. See id. at 846.

We believe that similar principles are applicable in this case. The statute relied upon by Tennessee Farmers would require Peggy Gaston to bring an action against the tortfeasor to collect benefits under the terms of her Tennessee Farmers' policy. Moreover, Tennessee Farmers was aware of Gaston's effort to settle the claim with CNL, but took no action to notify or warn her about the effects of such a settlement and allowed her to act so that she could no longer seek a recovery against the tortfeasor. Given that the purpose of the uninsured motorist statutes is to protect drivers from uninsured and under-insured motorists, see Griffin v. Shelter Mut. Ins. Co., 18 S.W.3d 195, 198 (Tenn. 2000), we believe that a direct action against Tennessee Farmers was proper under the unique circumstances of this case.[3]

### Tennessee Consumer Protection Act and Bad Faith

Tennessee Farmers next argues that the Court of Appeals erred in concluding that the TCPA may apply in this case. Tennessee Farmers contends that the provisions of the TCPA do not apply to insurance companies in the handling of claims and that the complaint filed by plaintiff Gaston failed to state a claim under this statutory scheme. Gaston argues that actions taken by insurance companies in the handling of claims fall within the purview of the TCPA.

The Tennessee Consumer Protection Act provides as follows:

> Any person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by this part, may bring an action individually to recover actual damages.

Tenn. Code Ann. § 47-18-109(a)(1) (2001).

The main purpose of the Act is to protect consumers, and it must be liberally construed to affect that purpose. See Tenn. Code Ann. § 47-18-102 (2001); ATS Southeast, Inc. v. Carrier Corp., 18 S.W.3d 626, 627 (Tenn. 2000). In addition, causes of action arising from the TCPA may be cumulative with other statutory remedies. Tenn. Code Ann. § 47-18-112 (2000); Myint v. Allstate Ins. Co., 970 S.W.2d 920, 926 (Tenn. 1998).

---

[3] We also note the general rule that the party who is the beneficiary of a statute can waive that benefit if it is not in violation of public policy or to the detriment of a third party. Black Diamond Coal Mining Co. v. Rankin, 98 S.W.2d 311, 312 (Tenn. 1936). We find these elements present here, and we hold that just as the jury should determine whether Tennessee Farmers waived the benefit of the policy provision, the jury should also determine whether it waived the benefit of Tennessee Code Annotated section 56-7-1206.

In <u>Myint</u>, an insured argued that his insurance company had engaged in an "unfair or deceptive act or practice" in violation of the TCPA where the insurer had refused to pay a claim under the terms of the policy. The insurer argued that the Act never applies to insurance companies and that the insured's only action was through the statutory bad faith provisions. <u>Myint</u>, 970 S.W.2d at 925. We concluded, however, that the TCPA may provide a cause of action for an insurer's "unfair or deceptive acts and practices," and that the language of Tennessee Code Annotated section 47-18-104(b)(27) (Supp. 2003), which prohibits "[e]ngaging in any other act or practice which is deceptive to the consumer or to any other person[,]" includes insurance companies. <u>Myint</u>, 970 S.W.2d at 926. Moreover, we emphasized that the insurance industry was not explicitly excluded from coverage under the TCPA. <u>Id.</u>; <u>see</u> Tenn. Code Ann. § 47-18-111 (2001).

Applying these principles, we conclude that Peggy Gaston may pursue a cause of action under the TCPA. The evidence at trial revealed that the Gastons had several meetings with David Brown, a Tennessee Farmers' claims adjuster, regarding Peggy Gaston's claim and that the Gastons sent Brown a copy of the letter they wrote to CNL, *i.e.*, the other motorist's insurance carrier. Neither Brown nor anyone else at Tennessee Farmers notified or informed Gaston, who was not represented by counsel, that her effort to settle with CNL would prohibit her from collecting under her own policy. In our view, a jury could reasonably conclude that Tennessee Farmers' conduct was unfair or deceptive under the TCPA. Accordingly, the trial court erred in granting a directed verdict on this issue.

Similarly, Peggy Gaston also sued for damages for "bad faith" under Tennessee Code Annotated section 56-7-105 (2000), which provides for a 25 percent penalty against an insurance company, in addition to the loss and interest, where the refusal to pay an insurance claim within 60 days is not in good faith. The language of this statute expressly applies to insurance companies and provides that a jury decide whether the evidence demonstrates bad faith on the part of the insurer. We believe that a reasonable jury could conclude that Tennessee Farmers' conduct in this case constituted bad faith in connection with its refusal to pay Gaston's claim. The trial court therefore erred in granting a directed verdict and refusing to allow the jury to decide this issue.

## CONCLUSION

After reviewing the record and applicable authority, we agree with the Court of Appeals that there was evidence from which a reasonable jury could find that the insurance company waived the subrogation provisions. We also conclude that the insured was not required to demonstrate that the insurance company had not been prejudiced and that the trial court improperly directed verdicts on the insured's claims under the Tennessee Consumer Protection Act and the bad faith statute. We therefore affirm the Court of Appeals' judgment and remand to the trial court for a new trial. Costs on appeal are taxed to the appellant, Tennessee Farmers Mutual Insurance Company.

_____
E. RILEY ANDERSON, JUSTICE

-8-