NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0978n.06
Filed: December 14, 2005

Case Nos. 04-5585, 04-6276

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| STATE INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| TWIN CITY FIRE INSURANCE | ) | DISTRICT OF TENNESSEE |
| COMPANY and PACIFIC INSURANCE | ) | |
| COMPANY, LIMITED, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |
| _____ | ) | |

BEFORE: BOGGS, Chief Judge; BATCHELDER and GIBBONS, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge. Defendants-Appellants Twin City Fire

Insurance Company and Pacific Insurance Company Limited (collectively known as "Hartford"

because of their affiliation with the Hartford Insurance Group) appeal the district court's order

denying them judgment as a matter of law on Plaintiff-Appellee State Industries, Inc.'s ("State")

claim that they violated the Tennessee Consumer Protection Act, T.C.A. § 47-18-101 *et seq.*

("TCPA"). Alternatively, Hartford asks the court to award a new trial because the district court

erroneously instructed the jury, and to vacate as moot the district court's declaration that Hartford's

insurance contracts with State required it to insure against punitive damages. Because we conclude

that Hartford is entitled to judgment as a matter of law on the issue of whether it violated the TCPA,

we will REVERSE the decision of the district court.

State, a Tennessee corporation with its principal place of business in Ashland City, Tennessee, manufactures water heaters. Twin City Fire Insurance Company, an Indiana corporation, and Pacific Insurance Company, a Connecticut corporation, are insurance companies affiliated with the Hartford Insurance Group. In 1994-95, State chose an insurance program under which it self-insured for product liability claims, defending and paying such claims itself, until the claims reached $2 million per occurrence or $5 million in the aggregate. State's insurance program consisted of three separate insurance contracts that it entered into with Hartford: a products liability policy, an umbrella policy, and an excess policy. The first two policies provided liability limits of $5,000.00 and $5 million respectively. The Excess Policy provided an additional $10 million of liability coverage. The policies are silent as to whether punitive damages are covered and make explicitly clear that Hartford "shall not be obligated to assume charge of, participate in, or pay for the investigation or defense of any 'claim' or 'suit.'"

In 1996, Heron and Sylvia Villarreal individually and on behalf of their minor child filed suit against State in Hidalgo County, Texas, claiming actual and punitive damages on behalf of their son, who was killed in a fire that started after an open gas can was left near one of State's water heaters. While State defended the action pursuant to its self-insured retention, it kept Hartford advised of all pre-trial processes and strategies and allowed Hartford to attend its settlement discussions. Shortly after trial commenced in the *Villarreal* case, State received a $900,000 settlement demand from the plaintiffs; State rejected the demand and the trial proceeded to judgment. The jury returned a verdict in favor of the Villarreals and awarded $7 million in compensatory damages and $5 million in punitive damages.

After the verdict was rendered, State submitted a claim to Hartford for payment of both the compensatory and punitive damages. Hartford initially denied State's claim for punitive damages via telephone. Then, in a letter dated March 15, 1999, Hartford explained that under *Powell v. Hartford Casualty Insurance Company*, 19 F. Supp. 2d 678, 696 (N.D. Tex. 1998) (holding that coverage provided by an automobile insurance policy for punitive damages is void and unenforceable under Texas public policy), it had no liability for punitive damages awarded against State. The letter also stated that there was nothing in the language of the insurance contracts that required Hartford to insure against punitive damages. At no time before the dispatch of this letter had Hartford explained to State that its policies did not cover awards of punitive damages.

On April 5, 1999, State filed the instant suit against Hartford in the United States District Court for the Middle District of Tennessee, alleging that Hartford: 1) had breached the insurance contracts; 2) had denied coverage in bad faith in violation of Tenn. Code. Ann.§ 56-7-105; 3) was estopped from denying coverage; and 4) had violated the TCPA by deceptively and unfairly waiting until after the *Villarreal* jury had rendered its verdict to inform State that it would not cover punitive damages. With regard to the TCPA claim, State alleges that it would have settled the *Villarreal* case had Hartford informed it of Hartford's understanding that Texas law prohibits insuring against awards of punitive damages. After State had filed the instant suit in federal court, it reached a settlement agreement with the Villarreals whereby State would pay $7 million in compensatory damages and the Villareals would waive their right to punitive damages. Accordingly, State paid $2 million under its self-insured retention and Hartford, as excess and umbrella carrier, paid the remaining $5 million.

3

In December of 1999, after *Villarreal* had been settled, State moved the district court for partial summary judgment, asking the court to rule that Hartford's policies covered the *Villarreal* punitive damage award. The district court granted State's motion and held, as a matter of law, that "the subject insurance policies, construed properly as Tennessee insurance contracts, provide coverage for punitive damage liability awards entered against the insured." State's case against Hartford was tried before a jury, which returned a verdict in favor of State on both the breach of contract and bad faith claim and the claim that State had violated the TCPA. The verdict form instructed the jury to determine the amount of the damage award on each claim, and advised the jury that State was not entitled to recover on both claims, but would be required to elect the theory on which it would recover, should the jury find in its favor on both. The jury awarded damages on each claim in the amount of $2,901,250.00, and the district court, on State's motion, doubled the jury's award pursuant to T.C.A. § 47-18-109(a)(3).

Hartford filed a motion under FED. R. CIV. P. 50 and 59 for judgment as a matter of law, new trial, or remittitur. The district court granted Hartford's motion in part, striking down the jury's award of damages for breach of contract and bad faith and reducing the TCPA award to $1.1 million, representing the difference between the amount for which State could have settled the *Villarreal* case at the commencement of the trial and the $2 million self-insured retention that State was forced to contribute to resolve the *Villarreal* case following the jury's verdict. Though it found that Hartford had no duty to advise State about the insurance coverage of punitive damages awards, the district court held that Hartford's decision not to notify State of its intent to deny coverage on punitive damages was deceptive and violated the TCPA; the court doubled the $1.1 million award

4

because Hartford had acted willfully. The district court also denied Hartford's alternative motions for a new trial or remittitur. Hartford's timely appeal followed.

Hartford argues that it is entitled to judgment as a matter of law under Rule 50(b) on the issue of whether it violated the TCPA. We review de novo the district court's denial of a motion for judgment as a matter of law under Rule 50(b). *H.C. Smith Investments, L.L.C. v. Outboard Marine Co*., 377 F.3d 645, 650 (6th Cir. 2004). As a federal court sitting in diversity, we apply the forum state's standard for granting judgment as a matter of law. *Id*. The Supreme Court of Tennessee described this standard in *Conatser v. Clarksville Coca-Cola Bottling Co*:

> In ruling on the motion, the court must take the strongest legitimate view of the evidence in favor of the non-moving party. In other words, the court must remove any conflict in the evidence by construing it in the light most favorable to the non-movant and discarding all countervailing evidence. The court may grant the motion only if, after assessing the evidence according to the foregoing standards, it determines that reasonable minds could not differ as to the conclusions to be drawn from the evidence.

920 S.W.2d 646, 647 (Tenn. 1995) (internal quotation omitted).

The TCPA provides, in pertinent part:

> (a) Unfair or deceptive acts or practices affecting the conduct of any trade or commerce constitute unlawful acts or practices and are Class B misdemeanors.
> (b) Without limiting the scope of subsection (a), the following unfair or deceptive acts or practices affecting the conduct of any trade or commerce are declared to be unlawful and in violation of this part . . .
> (27) Engaging in any other act or practice which is deceptive to the consumer or to any other person . . . .

T.C.A 47-18-104. Neither the TCPA nor the Supreme Court of Tennessee has defined the terms "deceptive" or "unfair" as used in the Act. *Ganzevoort v. Russell*, 949 S.W.2d 293, 298 (Tenn. 1997). "Where a particular act or practice has not been specifically addressed in the [TCPA], the definition of those terms are [sic] left to the courts on a case by case basis." *Id*. at 300. While the

Act does not impose strict liability, *id.* at 299, this court has held that the TCPA does not require proof of intent, which means that plaintiffs can recover for negligent violations. *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 569 (6th Cir. 2003) (citing *Menuskin v. Williams*, 145 F.3d 755, 767-68 (6th Cir. 1998)). The Supreme Court of Tennessee, however, has stated that "proof of deception" may be "dependent upon evidence of intent or knowledge." *Grazenvoort*, 949 S.W.2d at 300.

The district court held that Hartford violated the TCPA by failing to tell State what its policy did not cover. Hartford, however, had no duty to counsel State about the contents of State's own insurance policies. Nothing in the insurance policies themselves imposes a duty on Hartford to advise its policyholders about matters as to which the policy is silent, such as claims for punitive damages. Indeed, the policies, which are silent on the subject of punitive damages, state that Hartford has no duty to participate in the defense of any "claim" or "suit." Nor does the law of Texas—the state in which the *Villareal* action was tried—impose such a duty:

> [t]he majority rule is that where an insured maintains both primary and excess policies . . . the excess insurer is not obligated to participate in the defense until the primary policy limits are exhausted . . . The premiums charged are . . . a reflection of the risks undertaken. Because the primary insurer's duty to defend extends to covered claims without regard to their amount, an excess insurer's duty to defend is not typically invoked merely because a claim has been asserted against the insured in excess of primary limits.

*Keck, Machin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 20 S.W.3d 692, 700-01 (Tex. 2000) (internal quotations and citations omitted). Finally, as the district court correctly noted, Tennessee follows this rule as well. *See U.S. Fire Ins. v. Vanderbilt Univ.*, 82 F. Supp. 2d 788, 794 (M.D. Tenn. 2000) (quoting *St. Paul Fire & Marine Ins. v. Children's Hosp. Nat'l Med. Ctr.*, 670 F. Supp. 393, 402 (D.D.C. 1987) ("prior to the time the verdict was rendered, [the excess carrier] had no duty to speak with respect to the excess policies.")).

6

Insureds with a self-insurance retention, such as State, are their own primary carriers. *See Pacific Employers Ins. v. Domino's Pizza*, 144 F.3d 1270, 1276-77 (9th Cir. 1998). Because Hartford had absolutely no duty to participate in State's defense before the jury rendered a verdict in excess of the self-insured retention, it follows that Hartford had no duty to: 1) foresee that State interpreted its policies as insuring against awards of punitive damages (despite the policies' silence on the subject of punitive damages and Hartford's recent victory in *Powell*, which held that insurance policies covering punitive damages are unenforceable in Texas), 2) affirmatively disabuse State of such an idea, and 3) urge State to settle the case within State's self-insured limits.

State's argument that Hartford's omission violated the TCPA relies heavily on *Gaston v. Tennessee Farmers Mutual Insurance Company*, 120 S.W.3d 815 (Tenn. 2003), which held that a primary insurer violated the TCPA by not informing its insured that an unauthorized settlement would void coverage. In that case, Gaston, who had under-insured motorist coverage through Tennessee Farmers Mutual Insurance Company, was injured in an auto accident caused by a driver who was insured by CNL Insurance Company. Gaston sent a letter to CNL demanding payment of her medical bills and forwarded a copy to one of Tennessee Farmers's claims adjusters. *Id*. at 818. After Gaston reached a settlement with CNL, she asked Tennessee Farmers to make payments pursuant to its under-insured motorist policy. Relying on the policy's provision that Tennessee Farmers does not provide coverage if the insured reaches a settlement without the insurer's written consent, Tennessee Farmers denied Gaston's claim. The Supreme Court of Tennessee held that a jury could reasonably conclude that Tennessee Farmers's conduct was unfair or deceptive under the TCPA because—despite the fact that Tennessee Farmers received a copy of the proposed

7

settlement—it did not notify Gaston that an unauthorized settlement would void coverage. *Id*. at 822.

*Gaston* is distinguishable from the case at bar because, unlike Hartford, Tennessee Farmers had a duty, as a *primary* insurer, to participate in the policyholder's defense. *Gaston* is also distinguishable because in that case, by failing to inform Gaston that it would not pay her claim if she settled with CNL without Tennessee Farmers's authoriztion, Tennessee Farmers acted in its own interest and sought to avoid paying a claim. Here, if Hartford had advised State at the time of the $900,000 settlement demand that Hartford's policies did not cover punitive damages, and State had therefore agreed to the demand—as State now contends it would have done—Hartford's excess coverage would not have been triggered at all, with the result that Hartford would have saved $5 million. Hence, Hartford's omission, unlike Tennessee Farmers's, can hardly be seen as a deliberate ploy to avoid paying a claim.

Under all of the circumstances of this case, we think that Hartford is entitled to judgment as a matter of law on State's TCPA claim. Hartford did not inform State that it would cover punitive damages when, in fact, it would not; to the contrary, the policy does not mention such coverage and Hartford made no representations on the issue of punitive damages whatsoever. To hold that an excess insurer's silence, in the absence of a duty to speak, is a violation of the TCPA would penalize excess insurers, who have no duty to participate in the defense, for not providing policyholders with unsolicited legal advice.

Accordingly, we **REVERSE** the judgment of the district court and **REMAND** this case with instructions that the district court enter judgment as a matter of law in favor of Hartford. Because Hartford is entitled to judgment as a matter of law, we do not reach its alternative arguments.