804 So.2d 584 (2002)
STEWART & STEVENSON SERVICES, INC., etc., Appellant,
v.
WESTCHESTER FIRE INSURANCE COMPANY, etc., Appellee.
Nos. 5D01-298, 5D01-765.
District Court of Appeal of Florida, Fifth District.
January 18, 2002.
*585 Rhea P. Grossman of Carman, Beauchamp & Sang, P.A., Boca Raton, for Appellant.
Lewis F. Collins, Jr. and Anthony J. Russo of Butler Burnette Pappas, Tampa, for Appellee.
PALMER, J.
In this consolidated appeal, Stewart & Stevenson Services (S & S) appeals two final judgments entered by the trial court in favor of Westchester Fire Insurance Company (Westchester). The first judgment was entered following a jury verdict in favor of Westchester on S & S's claim for indemnity (Case No. 01-298). The second judgment awarded Westchester its costs in this litigation (Case No. 01-765). As to the first judgment, we find no error and, accordingly, affirm. As to the cost judgment, since the trial court failed to delineate how it arrived at the costs awarded, thereby making effective appellate review impossible, we vacate the order and remand the matter to the trial court for the entry of a judgment setting forth in detail the elements included in that cost judgment.
S & S designed and manufactured three diesel engines which were later installed on a ship called the "Viper". When one of the engines overheated and exploded it burned Steven Snell, a deck hand on the *586 ship. Snell's injuries were severe and his medical bills exceeded $400,000.00.
At the time of the accident, S & S possessed various layers of insurance coverage, all of which were purchased from broker John L. Wortham and Son, LLP (Wortham). Westchester provided the third layer of coverage in the amount of $10 million, after a self-insured layer of $200,000.00 and a $1.2 million layer of coverage provided by Lloyds of London. The Westchester policy provided coverage only after the S & S and Lloyds of London coverages were exhausted. Of particular importance to the instant appeal, Westchester's policy required S & S to notify Westchester of any claims or developments in any lawsuits that might reach into its policy coverage.
Snell filed a negligence suit against S & S and other co-defendants, including the ship builder that installed the engines, a fabricator that manufactured the cooling tanks for the engines, and the owner of the Viper. Since S & S was self-insured to an extent, it hired its own counsel to handle Snell's lawsuit. Counsel advised S & S of Snell's medical bills and that the case was very serious. Based on that advice, S & S notified Wortham of Snell's lawsuit. Wortham notified Lloyds of London but did not notify Westchester at that time. Snell made a written demand for $4.1 million to settle the lawsuit. Prior to mediation, S & S's counsel sent a letter to S & S advising that the case was worth between $2.5 and $3 million. A mediation was held. Westchester did not attend because it was unaware of Snell's claim at that time. After mediation failed, counsel for Lloyds of London sent a letter to S & S advising that S & S was the target defendant and that he agreed with S & S's counsel that the case had jury exposure in the $3 million range. He further recommended that if excess carriers had not yet been notified, they should be. S & S did not notify Westchester at that time because it was under the incorrect assumption that Wortham had already notified Westchester.
After mediation, S & S (with Lloyds of London's agreement), the owner of the Viper, and the ship builder agreed to settle the case for $2.5 million.[1] The three co-defendants each agreed to pay Snell $833.333.33, for a total of $2.5 million which would end the case with Snell. The co-defendants further agreed that they would later determine the relative percentage of fault among the co-defendants in order to determine how much each would actually contribute to the settlement. Westchester was still not aware of Snell's lawsuit and, therefore, did not have any input into the terms of the settlement.
Three months after the mediated settlement was completed, Westchester was notified of Snell's claim and the parties' settlement. The notice set forth the terms of the settlement and referenced the continuing litigation among the co-defendants to determine the relative percentage of liability. Thereafter, Westchester informed S & S that it was not going to participate in the case because S & S failed to timely notify Westchester of Snell's claim.
The co-defendants agreed to resolve the issue of relative liability among themselves through binding arbitration. At arbitration, the ship builder agreed to pay $250,000.00 in exchange for a release by the co-defendants. As a result, S & S and the ship owner shared the remaining financial responsibility for the settlement. The arbitration panel concluded that S & S was *587 75% liable for Snell's injuries due to its improper testing, and the ship owner was 25% liable for Snell's injuries due to the captain's negligence in overheating the engines.[2]
Since the arbitrator determined that S & S was liable for payment of $1,687,500 in damages, an amount which exceeded the amount of S & S's first two layers of insurance coverage, S & S made a claim to Westchester for excess coverage. Westchester denied the claim contending it had been prejudiced by S & S's failure to give timely notice as required by the terms of the policy. S & S thereafter filed the instant action for indemnity against Westchester.
The matter proceeded to trial and the jury found that S & S's failure to give timely notice of Snell's claim to Westchester caused actual prejudice to Westchester. In addition, the jury found that Wortham was not the agent of Westchester for the purpose of receiving notice of Snell's claim. The trial court entered a final judgment in accordance with the jury's verdict. After trial Westchester filed a motion to tax costs. The trial court conducted a hearing on the motion and then entered an order awarding costs in the amount of $15,955.17, including a $12,000.00 "expert fee."
S & S raises four issues for our review. First, S & S argues that the trial court abused its discretion in refusing to admit the testimony of its expert attorneys. A trial court's decision to admit or exclude evidence is reviewed by utilizing the abuse of discretion standard of review. "[T]he admission of evidence is within the sound judicial discretion of the trial judge, whose decision in such regard must be viewed in the context of the entire trial." Forester v. Jewell, 610 So.2d 1369 (Fla. 1st DCA 1992). We find no such abuse of discretion here.
S & S chose to use as its experts the attorneys who represented Snell and the ship owner's excess carrier in Snell's negligence action. When Westchester deposed the attorneys and asked them questions regarding their evaluation of the settlement proceedings and their strategy related thereto, they refused to answer on the grounds of attorney-client privilege. The attorneys also refused to produce documents for the same reason. Westchester filed a pre-trial motion in limine seeking to bar S & S's expert testimony based on its inability to fully cross-examine the witnesses. The trial court granted the motion and excluded S & S's expert testimony.
Section 90.705(1) of the Florida Statutes (1999) provides that on cross-examination an expert "shall be required to specify the facts or data" which underlie his or her opinion. In Dempsey v. Shell Oil Co., 589 So.2d 373, 378 (Fla. 4th DCA 1991), the Fourth District explained that the ability of a litigant to fully cross-examine an expert serves a critical function:
[W]hen the direct examination opens a general subject, the cross-examination may go into any phase, and may not be restricted to mere parts ... or to the specific facts developed by the direct examination ... but extends to its entire subject matter, and to all matters that may modify, supplement, contradict, rebut or make clearer that facts testified to in chief.... (Citations omitted).
Cross-examination of experts on relevant and material issues is especially important in view of the rules of evidence *588 that permit experts to testify and express opinions without setting out in detail all of the predicates upon which the opinion or testimony may be based. Those matters are now left largely to be explored on cross-examination. Hence if cross-examination is limited ... an expert's views and the soundness thereof may go largely untested.
Here, the attorney experts' refusal to answer questions and produce documents circumvented Westchester's ability to uncover facts or data underlying the opinions of the experts which could have modified, supplemented, contradicted, rebutted, or clarified those opinions. In addition, the information sought from the experts "was reasonably calculated to lead to the discovery of admissible evidence" and therefore fell within the broad scope of discovery. See Fla. R. Civ.P. 1.280(b)(1)(2001).[3] S & S could have chosen experts who were not involved in the underlying proceeding and, accordingly, would have no privileged documents or information. However, having chosen to use attorneys who were involved in the underlying proceedings, it was incumbent upon S & S to obtain a waiver of any attorney-client privilege if it intended to present those attorneys as testifying experts. Having failed to obtain such a waiver, the trial court properly excluded testimony of those witnesses.
S & S's second argument is that the trial court abused its discretion in refusing to admit evidence of Westchester's conduct subsequent to its receipt of written notice of Snell's lawsuit. The trial court's decision to exclude evidence of Westchester's investigation and lack of participation in the remaining dispute among the co-defendants following its receipt of notice of the settlement was not error, but, even if the ruling was erroneous, any such error was harmless because the trial court ultimately did admit evidence of Westchester's actions after receipt of the notice during Westchester's portion of the case. At that point, S & S was free to recall witnesses during its rebuttal case to fully explore Westchester's post-notice activities. S & S waived that right by not putting on a rebuttal case.
S & S's third claim is that the trial court erred in denying its motion for a directed verdict on the issue of whether Wortham was acting as Westchester's agent pursuant to the terms of the parties' contract. We disagree.
"Entry of directed verdict is proper only when the evidence and all inferences of fact, construed most strictly in favor of the non-moving party, cannot support in the minds of jurors any reasonable difference as to any material fact or inference." Gonzalez v. Largen, 790 So.2d 497, 499 (Fla. 5th DCA 2001) (citation omitted).
Texas law was applicable in this lawsuit. Texas law required a factual determination as to whether Wortham was an agent for Westchester. Article 21.02 of the Texas code provides that a person who performs certain acts on behalf of an insurance company is for certain purposes an agent of the insurance company. Texas law has recognized that the issue of agency can involve issues of fact. In Horne v. Charter Nat'l Ins. Co., 614 S.W.2d 182 (Tex.App. 1981), the court held:
While Art. 21.02 defines "agent" for purposes of certification, etc., under Chapter 21 of the Insurance Code we do not interpret it as dispositive of the issue as to whether an "agent" represents the insured or insurer when a question *589 arises as to who is bound by misinformation appearing on an application for insurance. Generally, the question of agency is one of fact.
Id. at 185 (citing Foundation Reserve Insurance Co. v. Wesson, 447 S.W.2d 436 (Tex.Civ.App.Dallas 1969, writ ref'd)). Here, evidence was presented by Westchester that raised a factual issue as to agency, including testimony that Wortham had no contact with Westchester because everything was handled through a wholesale agent, Wortham had no authority to act on behalf of Westchester, Wortham was not authorized to accept notice of loss or claim on behalf of Westchester, and Westchester never communicated directly with Wortham. Accordingly, the trial court properly denied S & S's motion for directed verdict.
S & S's final argument is that, by awarding a $12,000.00 expert fee, the trial court abused its discretion in awarding costs outside the parameters of the State-wide Uniform Guidelines for Taxation of Costs in Civil Actions. The trial court's order does not indicate how it determined the $12,000.00 figure and its determination is not evident from the evidence in the record. Issues were raised about the expert's reasonable hourly fee, whether paralegal work should be compensated, the reasonable number of hours billed by the expert, and whether certain costs of the expert were included in his fee. Given the lack of specificity provided in the cost judgment as to the expert's fee, we cannot effectively review it on appeal. With regard to the expert attorney fees awarded in this case, the same findings should be provided by the court as are required for the award of a party's attorney fees, including the reasonable number of hours expended, the reasonable hourly rate, and any other components which make up any part of the fee. See Simpson v. Simpson, 780 So.2d 985 (Fla. 5th DCA 2001). Since such findings were not included with regard to these expert attorney fees, we vacate the cost judgment as to that item and remand to the trial court for the entry of an order setting forth its findings as to the calculation of that fee. In all other respects, the cost judgment is affirmed.
Judgment in Case No. 5D01-298 AFFIRMED. Judgment in Case No. 5D01-765 VACATED, and cause REMANDED.
PLEUS, J., concurs.
GRIFFIN, J., concurs in part and dissents in part with opinion.
GRIFFIN, J., concurring in part; dissenting in part.
I respectfully dissent only from the portion of the majority opinion that requires the trial court to make a "delineation how it arrived at the costs awarded" and the holding that all the same facts must be set forth to support an award of expert witness fees for an attorney expert witness as for an award of attorney's fees to a party. I see no issue here at all. The trial court received an affidavit of expert witness fees for attorney McIntosh detailing his activities and billings. The trial court reduced the amount to $12,000, referring to this amount as "reasonable."
NOTES
[1] The fabricator was not participating in the litigation at this time, because it had defaulted.
[2] It had earlier been determined by the defendants that Snell was not comparatively negligent.
[3] Also, in "cases in which the right of cross-examination has been limited or cut-off, courts have found a violation of due process." Poole v. Unemployment Appeals Com'n, 719 So.2d 974, 977 (Fla. 5th DCA 1998) (Sharp, J., dissenting) (citations omitted).