RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0259P (6th Cir.)
File Name: 04a0259p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

H.C. Smith Investments,
L.L.C.,
              *Plaintiff-Appellee/*
              *Cross-Appellant,*

              v.

Outboard Marine
Company, et al.,
              *Defendants,*

Raytheon Aircraft
Services, Inc.,
              *Defendant-Appellant/*
              *Cross-Appellee.*

Nos. 02-1506/1611

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 00-00128—Richard A. Enslen, District Judge.

Argued: March 11, 2004

Decided and Filed: August 4, 2004

Before: MARTIN and CLAY, Circuit Judges; CUDAHY,
Senior Circuit Judge.[*]

———————————

## COUNSEL

**ARGUED:** Kathleen McCree Lewis, DYKEMA GOSSETT,
Detroit, Michigan, for Appellant. Jon R. Muth, MILLER,
JOHNSON, SNELL & CUMMISKEY, Grand Rapids,
Michigan, for Appellee. **ON BRIEF:** Kathleen McCree
Lewis, Kyle R. Dufrane, DYKEMA GOSSETT, Detroit,
Michigan, Richard G. Ward, SULLIVAN, WARD, ASHER
& PATTON, Southfield, Michigan, for Appellant. Jon R.
Muth, Susan G. Davis, MILLER, JOHNSON, SNELL &
CUMMISKEY, Grand Rapids, Michigan, for Appellee.

———————————

## OPINION

———————————

BOYCE F. MARTIN, JR., Circuit Judge. H.C. Smith
Investments, L.L.C. hired Raytheon Aircraft Services, Inc. to
inspect a jet airplane that it was considering purchasing.
Approximately one year after the inspection and subsequent
purchase, Smith Investments discovered that Raytheon failed
to detect that the airplane had extensive corrosion damage,
which substantially diminished its value and safety. Smith
Investments filed suit against Raytheon, alleging negligent
inspection, negligent supply of information, and breach of
contract with respect to the inspection.

———————————

[*] The Honorable Richard D. Cudahy, Senior Circuit Judge of the
United States Court of Appeals for the Seventh Circuit, sitting by
designation.

A jury found in favor of Smith Investments on the negligent-inspection and negligent-supply-of-information claims, and in favor of Raytheon on the breach-of-contract claim. The district court awarded Smith Investments approximately $1.9 million in damages.

Raytheon appeals the district-court judgment, arguing that the court erred in granting Smith Investments' Rule 50 motion and in instructing the jury on the negligent-supply-of-information claim. Smith Investments cross-appeals, arguing that the district court erred in denying its Rule 50 motion and in instructing the jury that it could allocate to Smith Investments the fault of its agent, Travel Consultants Aviation. We find no error in any of the judgments of the district court, and we affirm.

## I.

In early 1997, Smith Investments hired Travel Consultants Aviation to assist it in its endeavor to locate and purchase a second-hand airplane for personal and charter use. Travel Consultants Aviation eventually located a 1969 Hawker-Siddeley jet airplane in Florida at the Aero Toy Store, which had purchased the airplane from Outboard Marine Company. On July 10, 1997, Smith Investments submitted a conditional offer to purchase the airplane for $2.2 million, subject to the airplane being inspected by Raytheon at its Ft. Lauderdale, Florida, location.

Shortly thereafter, Tony Zeka, a Raytheon mechanic, inspected the airplane and then faxed a handwritten, nine-page letter to Lloyd Huth, a Travel Consultants Aviation employee, that set forth his findings. The letter stated that the airplane's logbooks were not up to Federal Aviation

Regulations "Part 135"[1] standards (but that they could be with additional work) and listed the "squawks"[2] that Mr. Zeka discovered while conducting a physical inspection of the airplane. Mr. Huth also stated that Mr. Zeka told him during a phone conversation that the airplane had been well kept. After Mr. Zeka reported his findings to Travel Consultants Aviation, the sale was completed and Smith Investments took possession of the airplane.

Roughly one year later, in September 1998, the airplane was taken to the Aviation Maintenance and Technical Support center in St. Louis, Missouri, for a mandatory, 1200-hour, 24-month inspection. During the course of this inspection, extensive internal corrosion of the airplane was discovered. Smith Investments incurred substantial costs in repairing the corrosion uncovered during this inspection. In addition, the prospect that additional corrosion was yet to be discovered within the body of the airplane raised serious questions about the airplane's safety and value.

After learning about the corrosion, Smith Investments contacted Raytheon to inquire why this had not been discovered when it inspected the airplane. Raytheon responded by stating it was hired only to conduct a "Part 135" inspection and that Travel Consultants Aviation never requested a more extensive inspection that would have revealed the corrosion. Wolfgang Heuberger, Raytheon's Ft. Lauderdale service-center manager, stated in deposition that no Raytheon employee would have agreed to conduct a "pre-purchase" inspection because of the vagueness of the term. Raytheon will inspect airplanes, Mr. Heuberger stated, but

---

[1]"Part 135" refers to the section of the Federal Aviation Regulations that governs logbook-inspection standards for charter airplanes.

[2]"Squawks" refer to problems with the airplane that require repair or replacement.

only for requests narrower or more specific than a "pre-purchase" inspection. In addition, according to John C. Willis, President of Raytheon Aircraft Services, the scope of work requested was limited to the "Part 135" inspection, which involved logbook research and a pre-flight check of the engine and oil. Mr. Willis also stated that Raytheon stopped inspecting the airplane after Mr. Huth instructed Raytheon that Smith Investments would not be buying the airplane based on the "Part 135" compliance issue that Mr. Zeka had reported earlier to Mr. Huth. Mr. Willis added that the airplane was removed from the Raytheon service center the day after Mr. Huth relayed this message to Raytheon.

According to Smith Investments, Travel Consultants Aviation directed Raytheon to conduct a comprehensive "pre-purchase" aircraft evaluation and Mr. Zeka represented to Travel Consultants Aviation that he would complete this task. Smith Investments contends that Mr. Zeka failed to disclose that the Ft. Lauderdale service center was not authorized by Raytheon for Hawker inspections and, therefore, that its employees were unaware of the inspection criteria in Raytheon's Hawker Evaluation Guide, which includes inspection for corrosion. Smith Investments also alleges that the invoice submitted by Raytheon for its work, which states "evaluated aircraft," implies that Raytheon conducted a comprehensive inspection of the airplane.

## II.

In 2000, Smith Investments filed its initial complaint against Raytheon and alleged breach-of-contract and negligent-inspection claims. In 2002, Smith Investments amended its complaint for the second time and added a negligent-supply-of-information claim against Raytheon. Raytheon answered the complaint and pleaded thirteen affirmative defenses, including comparative fault of Smith Investments' agent, Travel Consultants Aviation.

Outboard Marine Company, the original owner of the airplane, was named at the outset of the suit as a co-defendant. The district court granted Outboard Marine's motion to dismiss the fraudulent-misrepresentation and negligent-misrepresentation claims alleged by Smith Investments. Outboard Marine also moved to dismiss the third claim against it, a breach-of-express-warranty claim. The district court denied this motion pending either a stay or termination of Outboard Marine's Chapter 11 bankruptcy proceeding in the Northern District of Illinois.

The case was tried before a jury in 2002. At the close of Raytheon's defense, Smith Investments moved under Federal Rule of Civil Procedure 50 for judgment as a matter of law on Raytheon's affirmative defense of Travel Consultant Aviation's comparative fault as a non-party. The district court granted the motion in favor of Smith Investments, precluding the jury from allocating fault to Smith Investments for any negligence of Travel Consultants Aviation as a non-party to the suit. The next day, Smith Investments again moved under Rule 50 for judgment as a matter of law on Raytheon's affirmative defense of Travel Consultants Aviation's comparative fault as an agent of Smith Investments. The district court denied this motion and stated: "The unstated premise of yesterday's ruling as to [Travel Consultants Aviation] was that TCA did not occupy the position of a non-party because TCA was acting as an agent of plaintiff. This clarification is obvious and the jury should be allowed to consider TCA's negligence as the negligence of a party."

The jury returned a verdict in favor of Smith Investments on the negligent-inspection and negligent-supply-of-information claim and in favor of Raytheon on the breach-of-contract claim. The jury allocated 80% of the comparative fault to Raytheon and 20% to Travel Consultants Aviation as Smith Investments' agent. The district court awarded approximately $1.9 million in damages to Smith Investments.

On appeal, Raytheon argues that the district court erred in granting Smith Investments' Rule 50 motion as to Travel Consultants Aviation's status as a non-party and in instructing the jury on the negligent-supply-of-information claim. Smith Investments cross-appeals and argues that the district court erred in denying its Rule 50 motion as to Travel Consultants Aviation's status as an agent and in instructing the jury that it could allocate to Smith Investments the fault of its agent.

### III.

We review the denial of a Rule 50 motion *de novo. Gray v. Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595, 598 (6th Cir. 2001). As a federal court sitting in diversity, we apply the standard for a motion for judgment as a matter of law used in Florida, the state law that governs this action. *See Potti v. Duramed Pharm., Inc.,* 938 F.2d 641, 645 (6th Cir. 1991).

As to the allegations of improper jury instructions, we review those claims *de novo* as well. *Fisher v. Ford Motor Co.*, 224 F.3d 570, 576 (6th Cir. 2000). A district court's refusal to give a jury instruction is reviewed for abuse of discretion. *Ibid.*

### IV.

The first issue Raytheon alleges on appeal is that the district court erred in granting Smith Investments' motion for judgment as a matter of law on Raytheon's affirmative defense of comparative fault. Specifically, Raytheon pleaded that Travel Consultants Aviation, Smith Investments' purchasing agent, was comparatively liable for the damages. By granting this motion in favor of Smith Investments, the district court precluded the jury from directly apportioning any negligence to Travel Consultants Aviation in its own capacity.

We review *de novo* a district court's grant of a judgment as a matter of law. *Gray*, 263 F.3d at 598. As a federal court sitting in diversity, we apply the standard for a motion for judgment as a matter of law used in Florida. *See Potti,* 938 F.2d at 645.

Judgment as a matter of law is proper "only when the evidence and all inferences of fact, construed most strictly in favor of the non-moving party, cannot support in the minds of jurors any reasonable difference as to any material fact or inference." *Stewart & Stevenson Servs., Inc. v. Westchester Fire Ins. Co.*, 804 So. 2d 584, 588 (Fla. App. 2002). Raytheon bore the burden of pleading comparative fault as an affirmative defense. *See* Fla. Stat. Ann. § 768.81(3)(e). This required Raytheon to demonstrate to the court "that there [was] legally sufficient evidence in the record from which the jury [could] find that [Travel Consultants Aviation, the non-party] was at fault." *S. Bell Tel. & Tel. Co. v. Florida Dep't of Transp.*, 668 So. 2d 1039, 1041 (Fla. App. 1996). Smith Investments moved for judgment as a matter of law and argued that Raytheon failed to demonstrate that legally sufficient evidence existed to support a finding that Travel Consultants Aviation was at fault. Specifically, Smith Investments argued that in Raytheon's attempt to ascribe negligence to Travel Consultants Aviation as a non-party, Raytheon failed to articulate an applicable standard of ordinary care or to establish that Travel Consultants Aviation's conduct fell short of the standard. The district court granted judgment as a matter of law on the grounds that Travel Consultants Aviation was an agent of Smith Investments rather than a non-party. Instructing the jury, the district court stated:

An agency relationship existed between the plaintiff [Smith Investments] and Travel Consultants [Aviation] . . . . An agent is a person who was employed to act for another whose actions are controlled by the employer or subject to the employer's right . . . to control. The

plaintiff is responsible for the negligence of TCA, if such negligence occurred while TCA was performing services which it was employed to perform or while TCA was acting at least in part because of a desire to serve the plaintiff and was doing something that was reasonably incidental to its employment or something the doing of which was reasonably foreseeable and to be expected of persons similarly employed.

The effect of this instruction permitted the jury to allocate any fault of Travel Consultants Aviation directly to Smith Investments as an agent rather than to Travel Consultants Aviation as a non-party. We find no error in the district court's grant of the motion for judgment as a matter of law. Although Florida law permits a jury to apportion comparative fault to a non-party, *see* Fla. Stat. Ann. § 768.81(3)(e) and *Fabre v. Marin*, 623 So. 2d 1182 (Fla. 1993) (overruled on other grounds), a third party to whom fault may be attributed as an agent should not also have fault attributed to it as a non-party in the same suit. That would be duplicative. Furthermore, we are unpersuaded that permitting the jury to apportion any fault of Travel Consultants Aviation as a non-party rather than as an agent would have affected the outcome of this case or would "support in the minds of jurors any reasonable difference as to any material fact or inference." *Stewart & Stevenson Servs.*, 804 So. 2d at 588. Therefore, we affirm the district court's grant of the motion for judgment as a matter of law.

V.

The second issue Raytheon argues on appeal is that the district court erroneously instructed the jury regarding Raytheon's liability for the tort of negligent supply of information. This tort imposes liability on one who, in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others who

justifiably rely on this information in their business transactions if the supplier fails to exercise reasonable care or competence in communicating the information. *Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 696 So. 2d 334, 336 (Fla. 1997). Raytheon contends that liability for this tort requires an affirmative statement, but that, at most, Raytheon made an omission for which liability cannot be imposed.

We review *de novo* whether the district court's jury instructions were proper. *Fisher*, 224 F.3d at 576. We review for abuse of discretion whether the district court properly refused to give a specific jury instruction. *Ibid.*

The district court instructed the jury on the negligent-supply-of-information claim as follows:

The claim of the plaintiff [Smith Investments] is that there was information negligently supplied by the defendant [Raytheon], or negligent supply of information. The following instructions relate to the plaintiff's claim of negligent supply of information.
Let me begin by explaining the plaintiff's negligent supply of information claim by informing you of the specific elements or items of proof that the plaintiff is required to prove by a preponderance of the evidence. And here there are eight of them. Not three or four.
First, that the defendant, in fact, supplied information to the plaintiff to use in making a business decision.
Secondly, that the defendant supplied the information in the ordinary course of business as an aircraft service station.
Third, that the defendant intended to supply this information either directly or indirectly for the benefit of the plaintiff.
Fourth, that the information supplied was false and misleading because of incompleteness.

Fifth, that the defendant failed to use reasonable care in providing the information.

Sixth, that had the defendant used reasonable care, it would have known that the information was false or misleading because of incompleteness.

Seventh, that the plaintiff justifiably relied on that information.

And eighth, that the negligent supply of false information was a legal cause of . . . damages.

Florida has adopted the position set forth in the Restatement (Second) of Torts § 552 on negligent misrepresentation, *Gilchrist Timber Co.*, 696 So. 2d at 339 ("By this opinion, we adopt the Restatement (Second) of Torts' position on negligent misrepresentation contained in section 552"), which reads:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

*Gilchrist Timber Co.*, 696 So. 2d at 337.

Raytheon asserts that the phrase "suppl[ying] false information" in § 552 requires an affirmative misrepresentation, and that Raytheon made no affirmative misrepresentation about the airplane. Contrary to that assertion, we hold that Raytheon in fact made affirmative misrepresentations about the condition of the airplane in Mr. Zeka's nine-page letter to Travel Consultants Aviation. In this letter, Mr. Zeka reported that he had reviewed the airplane's logbooks and then he listed, over several pages, a series of "squawks" he had discovered "[d]uring examination of the aircraft[.]" In this list of "squawks," Mr. Zeka also referred to corrosion under one of the wings. In addition, Mr. Huth of Travel Consultants Aviation stated in deposition that Mr. Zeka told him that the airplane had been well kept. We think it is relevant that these statements were made after Mr. Zeka represented to Mr. Huth that he was a Hawker expert and failed to inform him that Raytheon's Ft. Lauderdale service center was not an authorized Hawker inspection site. Though these last two considerations may constitute omissions, they establish a context in which the affirmative misstatements of Mr. Zeka to Mr. Huth regarding the airplane's condition would be reasonably relied upon.

Thus, we hold that the affirmative misstatements made by Mr. Zeka to Mr. Huth about the airplane's condition are sufficient to support § 552 liability. Therefore, we find no error in the district court's jury instruction.

## VI.

On cross-appeal, Smith Investments argues that the district court erroneously instructed the jury that Travel Consultants Aviation was its agent and, therefore, that the jury erroneously attributed Travel Consultants Aviation's liability to Smith Investments. According to Smith Investments, Travel Consultants Aviation was an independent contractor

for whom no liability can be attributed to Smith Investments. Raytheon contends that this argument has no merit because Travel Consultants Aviation was an agent of Smith Investments and that attributing its liability to Smith Investments comports with the fundamental doctrines of agency law.

The propriety of a jury instruction is reviewed *de novo*. *Fisher*, 224 F.3d at 576. The refusal to give a jury instruction is reviewed for abuse of discretion. *Ibid.*

We are unpersuaded by Smith Investments' argument and hold that an agency relationship existed. First, designating Travel Consultants Aviation as an agent of Smith Investments established the requisite standing for Smith Investments to pursue its breach of contract claim against Raytheon. Indeed, Smith Investments explicitly refers to Travel Consultants Aviation as its agent in (1) the "Aircraft Acquisition Agreement," signed by both Smith Investments and Travel Consultants Aviation, in (2) its Second Amended Complaint and Jury Demand, and in (3) its Reply Brief Supporting Plaintiff's Motion for Partial Summary Judgment. In addition, this agency relationship was the "only judicial notice of the whole trial," and no party objected to this notice.

We realize, however, that use of the term "agent" is not legally determinative. *Nazworth v. Swire Florida, Inc.*, 486 So. 2d 637, 638 (Fla. App. 1986). Indeed, "[t]he standard for determining whether an agent is an independent contractor is the degree of control exercised by the employer or owner over the agent. More particularly, it is the *right* of control, and not *actual* control, which determines the relationship between the parties." *Ibid.* (internal citations omitted). Although Mr. Smith testified that he personally did not control how Travel Consultants operated, he also testified that the relationship between his company and Travel Consultants Aviation was controlled by the Aircraft Acquisition Agreement, which identified Travel Consultants Aviation as Smith Investments'

agent. Thus, even under this more stringent standard, we are convinced that an agency relationship existed: Smith Investments maintained a right to control whether Travel Consultants Aviation could negotiate the purchase of an airplane and, if so, to direct Travel Consultants Aviation in that purchase.

As the principal for Travel Consultants Aviation, Smith Investments is liable for the work Travel Consultants Aviation conducted within the scope of its role as agent. *See Life Ins. Co. of N. Am. v. Del Aguila*, 417 So. 2d 651 (Fla. 1982) (Florida follows the basic doctrine of agency law wherein a principal is liable for the tortious conduct of his agent, even though not authorized, if the agent was acting within the scope of his employment or his apparent authority). As stated in the "Aircraft Acquisition Agreement," the inspection of the airplane was within the scope of Travel Consultants Aviation's role as Smith Investments' agent. Therefore, we hold that Travel Consultants Aviation was an agent of Smith Investments and, thus, the district court properly attributed the fault, if any, of Travel Consultants Aviation to Smith Investments.

VII.

On cross-appeal, Smith Investments also argues that the district court erred in denying its motion for judgment as a matter of law on Raytheon's affirmative defense of comparative fault attributable to Travel Consultants Aviation.

We review the denial of a motion for judgment as a matter of law *de novo*. *Gray*, 263 F.3d at 598. Under Florida law, judgment as a matter of law is proper "only when the evidence and all inferences of fact, construed most strictly in favor of the non-moving party, cannot support in the minds of jurors any reasonable difference as to any material fact or inference." *Stewart & Stevenson Servs., Inc.*, 804 So. 2d at 588.

According to Smith Investments, Raytheon failed to establish an applicable standard of ordinary care for Travel Consultants Aviation and its breach of this standard. Smith Investments contends that this amounts to reversible error. Raytheon counters this claim, stating that it established a standard of care and the breach of this standard through the testimony of Robert Francis Stanford, an expert witness in the field of advising airplane purchasers. Mr. Stanford, whose line of work is similar to the services provided by Travel Consultants Aviation, testified about airplane inspections and how he guards his clients' interests during the airplane-acquisition process.

We hold that the district court committed no error in denying the motion for judgment as a matter of law and that Raytheon laid a proper foundation for a comparative-negligence affirmative defense. Furthermore, because an agency relationship existed between Smith Investments and Travel Consultants Aviation, we also hold that the jury permissibly apportioned a percentage of fault to Smith Investments, either because of negligence on its own part or for that of its agent. *See Del Aguila*, 417 So. 2d 651. Smith Investments pleaded that Travel Consultants Aviation was its agent, and documentary evidence and the conduct of the two companies proved an agency relationship existed.

We therefore find that Raytheon established an applicable standard of ordinary care for an agent in this context and a breach of this standard. We also find no merit to Smith Investments' allegation that Travel Consultants Aviation was not its agent. The district court's denial of the motion for judgment as a matter of law is affirmed.

_____VIII.

Based on the foregoing, we hereby affirm the district court's judgments in their entirety.