Andrew David MAIR; David Mair; Patricia Mair; Kathryn Mair, a minor, by her next friend David T. Mair; and Douglas Mair, a minor, by his next friend, David T. Mair, Plaintiffs–Appellants, Cross–Appellees,

v.

C & O RAILROAD a/k/a the Chesapeake & Ohio Railroad, Defendant–Appellee, Cross–Appellant.

Nos. 85–1565, 85–1566.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 21, 1987.

Decided July 12, 1988.

---

Richard E. Shaw, Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen & Bartnick, Detroit, Mich., Monica Farris Linkner, Donald S. Edwards, Columbus, Ind., Sheldon L. Miller (argued), Sheldon D. Erlich, Detroit, Mich., for plaintiffs-appellants, cross-appellees.

Gene S. Davis, Driggers, Schultz, Herbst & Paterson, Troy, Mich., for defendant-appellee, cross-appellant.

Before MARTIN, JONES and WELLFORD, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

In this action defendant Chesapeake and Ohio Railroad Company ("C & O") appeals from the district court's judgment entered on a jury verdict finding it liable for injuries suffered by Andrew Mair in a railroad accident. Plaintiffs Andrew, David and Patricia Mair appeal from the district court's order reducing their damage award. Upon consideration, we find that the judgment entered on the jury's verdict was erroneous, thus we hereby reverse.

### I.

The salient facts of this appeal are as follows. On March 20, 1976, Andrew Mair, then age 16, and two companions (Robert Katon, age 15 and Jack Brown, age 16) entered onto C & O's property in Wayne, Michigan, with the intention of hopping a train. At that time, Mair told his companions that he was experienced in this activity. Mair later admitted, however, that he had never previously hopped a moving train, but formed the belief that it would be easy to do so from watching television.

Mair, Katon and Brown entered C & O's railroad yard by climbing over an embankment. Once in C & O's yard, the boys hopped a slow moving flat car that was being switched between tracks. They hoped to ride this car back home to Ypsilanti. Shortly after hopping the car, however, it stopped and all three were approached by two C & O employees, brakeman Donald Darling and engineer John Guthrie. The two workmen were engaged in switching operations. Their job duties also apparently included watching for and removing trespassers from C & O's property. C & O's policy provided that anyone who did not belong on company property should be "removed." Standard procedure required that trespassers be informed that their presence on railroad property was not authorized and that they should leave.

There is some dispute over what was said and done during the encounter between the trio and C & O's employees. The three teenagers all testified that when Darling and Guthrie approached them, they explained that their car had broken down and they were trying to get home to Ypsilanti. They contended that neither man ordered or instructed them to leave the premises, nor warned them of any danger. All three boys testified that the railroad men told them that the train they wanted to hop was a westbound Penn Central train that would be coming by in about fifteen minutes.

Guthrie and Darling deny this version of the facts. Darling testified that when he noticed Mair, Katon and Brown he pulled the switching engine (on which he and Guthrie were working) alongside the flat car where they were first seen. They then asked the boys what they were doing in the C & O yard, and instructed them to leave the area because of the dangers associated with moving trains. Darling further testified that he observed Guthrie escorting the trio off C & O's property.

Guthrie testified that when he saw the boys, he climbed off the engine, went over to them, and told them that the yard was not a safe place. He then escorted them to C & O's property line and watched as they walked away from the C & O yard.

In any event, following this encounter, Mair, Katon and Brown left C & O's property. They crossed numerous railroad tracks in their effort to reach Penn Central's yard. The three boys claim that they followed the men's directions and upon arriving at the stated location, sat in a Penn Central box car and waited until a Penn Central freight train came by. As the lead engine of the train passed they waved at the locomotive engineer and he waved back. The engineer took no other action after seeing the boys in the Penn Central yard. As the train was moving at approximately fifteen miles per hour, all three boys proceeded to hop it. Mair was the first to try. He tried to grab onto a ladder on the side of the moving train. His grasp slipped, however, and he was pulled under the train's wheels and suffered severe and crippling injuries. Both legs were amputated and his spine was broken, rendering him a quadriplegic. Mair has spent about half of his life since the accident in hospitals.

Mair and his parents, David and Patricia Mair, brought suit against C & O and Penn Central for the injuries sustained by Mair. Prior to trial Penn Central settled with the plaintiffs.[1]

The original complaint against C & O sought recovery based upon theories of negligence and attractive nuisance. Shortly before the trial, plaintiffs amended their complaint and also alleged willful and wanton misconduct and gross negligence. The case proceeded to trial against C & O before Judge George E. Woods of the Southern Division of the Eastern District of Michigan. At the close of plaintiffs' proofs, C & O moved for a directed verdict. The trial court dismissed all claims for attractive nuisance and took the questions of negligence, gross negligence and willful and wanton misconduct under advisement. The case was submitted to the jury and a verdict was returned in favor of the plaintiffs in the amount of $3,536,400. The jury also found that Mair had been 65% compara-

tively negligent. The judge calculated the damages in the following manner:

| | |
|---|---|
| Gross Damages | $3,536,400 |
| Adjustment for Negligence Offset | × .35 |
| | $1,237,740 |
| Settlement offset | $ 350,000 |
| Total Judgment | $ 887,740 |

The judge further ordered that prejudgment interest be calculated in the following manner:

| | |
|---|---|
| February 26, 1979 to June 1, 1980 | 6% |
| June 1, 1980 to Date of Judgment | 12% |
| Date of Judgment to Date of Judgment Satisfied | Appropriate federal treasury bill issuance yield rate. |

J.App. at 146. Plaintiffs thereafter moved that the court allow them to recover postjudgment interest on the entire judgment, i.e., interest on costs as well as prejudgment interest. The judge declined to do so, and in an amended judgment specifically stated that postjudgment interest was not to run on that portion of the judgment designated as prejudgment interest.

Subsequently, C & O moved for a judgment notwithstanding the verdict or a new trial. Both motions were denied by the trial court. The court noted that competent evidence was adduced at trial from which the jury could conclude that:

1) Plaintiff, Andrew Mair, while on the property of defendant, C & O, engaged in conversation with two of C & O's employees.

2) Plaintiff and his two companions left the C & O yard and traveled to the Penn Central Yard where plaintiff, Andrew Mair, was injured while attempting to board a moving train.

3) Defendant's employees, while in conversation with plaintiff, were acting within the scope of their employment in attempting to remove plaintiff and his companions from defendant's property.

4) Plaintiff acted in a negligent manner.

---

1. The parties stipulated to a credit of $350,000 to be applied to the verdict of Andrew Mair, $25,000 to be applied to the verdict of Patricia Mair, and $25,000 to be applied to the verdict of David Mair. J.App at 109.

5) Defendant's employees acted in a negligent manner.

6) The only reasonable conclusion as to a proper verdict was to find for plaintiff and also to find plaintiff contributorily negligent.

Plaintiffs appeal from the judgment and amended judgment regarding the method of calculating the judgment to account for the pretrial settlement and comparative negligence findings. Plaintiffs also appeal from that portion of the judgment which denies the accrual of postjudgment interest on the prejudgment interest which had been awarded by the trial court pursuant to state statute. C & O cross appeals from certain rulings of the trial court during trial and the denial of C & O's motions for directed verdict, judgment notwithstanding the verdict or new trial.

## II.

The dispositive issue in this appeal is whether the district court erred by submitting this case to the jury instead of granting a directed verdict to C & O. Since it is our opinion that the district court in fact erred in doing so, the other issues raised regarding jury instructions and damages need not be addressed.

Our standard for reviewing a district court's decision to grant or deny a motion for a directed verdict is the same standard as that originally applied by the district court. *Gootee v. Colt Industries, Inc.*, 712 F.2d 1057, 1062 (6th Cir.1983). This case is in federal court due to diversity of citizenship. Pursuant to *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), federal courts are bound by state law when they determine whether there is sufficient evidence to raise a jury question. *Gootee*, 712 F.2d at 1062. Under Michigan law, the general standard for a directed verdict "is whether the evidence is such that, without weighing the credibility of witnesses or considering the weight of the evidence, there is substantial evidence from which the jury could find in favor of the party against whom the motion is made. In making this determination, the evidence must be viewed in the light most favorable to

that opposing party. Only when it is clear that reasonable men could come to but one conclusion from the evidence should a court remove an issue from the jury." *Gootee*, 712 F.2d at 1062. " '[T]he doubtful case ... calls for jury instruction and jury verdict rather than a verdict by order of the court.' " *Krugh v. Miehle Co.*, 503 F.2d 121, 127 (6th Cir.1974) (applying Michigan law) (citation omitted).

## III.

In our view, the district court erred by sending this case to the jury because, based on the facts here, no reasonable person could answer either of the following key questions in a way that would make C & O liable for Mair's injuries. As we see it, the key questions in this appeal are: 1) whether C & O is liable for Mair's injuries because as a landowner it owed Mair a duty of care which it breached, and 2) whether C & O is liable for Mair's injuries because it employed workers who allegedly advised Mair to go into a dangerous place. For the reasons set forth below, we hold that C & O is not liable for Mair's injuries because 1) it did not breach any duty of care to Mair, and 2) it is not responsible for acts of its employees that were outside of the scope of their employment.

### A.

Well-settled Michigan law provides the basis of our conclusion that C & O owed Mair no duty of care. In Michigan, duty in a negligence action is a question of law for the court to decide. *Moning v. Alfono*, 400 Mich. 425, 436–37, 254 N.W.2d 759, 764, *reh'g. denied* 401 Mich. 951 (1977). And, the Michigan Supreme Court defines duty as "essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person." *Id.* at 438–39, 254 N.W.2d 759. A close look at the following facts precludes a holding that C & O owed Mair any duty of care. All parties agree that Mair trespassed on C & O's property; that all of Mair's injuries occurred on Penn Central's property; and

that all of Mair's injuries were caused by a Penn Central train.

As a landowner, C & O owed Mair no duty of care because in Michigan the general rule is that a landowner has no duty to keep his premises in a safe condition for the benefit of a trespasser. *Preston v. Sleziak*, 383 Mich. 442, 447, 175 N.W.2d 759, 761 (1970). Only under special circumstances, such as if a trespasser is discovered, does a landowner owe a duty to make his property safe or warn of defects. *Draper v. Switous*, 370 Mich. 468, 471, 122 N.W.2d 698, 699–700 (1963). *See also* Restatement (Second) of Torts §§ 334–39 (1965).

Moreover, all of Mair's injuries occurred on Penn Central's property and under Michigan law the actual site of a person's injury is crucial. Michigan's general rule is that a landowner has no duty of care for individuals on land beyond the area over which the landowner has possession or control. *Rodriguez v. Detroit Sportmen's Congress*, 159 Mich.App. 265, 271, 406 N.W.2d 207, 210 (1987). The exception to this general rule is when a defect on a landowner's property or a failure by that landowner to maintain his property causes injury to an individual on adjacent land. The case of *Langen v. Rushton*, 138 Mich. App. 672, 360 N.W.2d 270 (1984), illustrates this exception. In that case, the Michigan Court of Appeals ruled that an owner had a duty to develop and maintain a shopping center, including the parking area and its exit and entry ways, so as not to injure a motorist traveling on an adjacent highway. *Id.* at 678, 360 N.W.2d 270. *See also Bannigan v. Woodbury*, 158 Mich. 206, 122 N.W. 531 (1909) (where liability was imposed on a landlord for a defect on his property which caused injury to a passerby). Since Mair's injuries were caused by neither a defect in C & O's property nor by C & O's failure to maintain its property, Michigan's general rule applies. Thus, we hold that C & O is not liable for injuries which Mair sustained on Penn Central's property.

Other jurisdictions that have been confronted with similar factual situations have also held that a landowner's duty of care does not extend beyond the bounds of his land. For example, in *Thomas v. Duquesne Light Co.*, 347 Pa.Super. 492, 500 A.2d 1163 (1985), the plaintiff was injured when he fell from an electrical tower owned by the defendant electric company. Prior to the injury, the plaintiff and his companions had been engaged in a drinking party on the land of still another defendant. In order to reach the electrical tower, plaintiff and his friends had to trespass across property owned by the defendant-railroad. The trial court granted the railroad's motion for summary judgment. The court of appeals affirmed the district court, stating:

> [I]t is clear that prevailing legal precedent supports the conclusion that one who has suffered harm as a result of encountering a purported hazardous artificial condition on another's land, as allegedly occurred in this case, cannot recover damages from the owner of the property over which he passed to reach the land on which the dangerous condition existed.

*Duquesne*, 500 A.2d at 1167. The same logic is applicable to this case. As the facts of this case amply demonstrate, C & O's only relation to Mair's injury is the fact that Mair trespassed across its property to arrive at the place where he suffered his injury. In our view, a trespass of this nature is not enough to impose a duty of care on C & O.

### B.

■ In an effort to diminish the significance of the fact that Mair's injuries did not take place on C & O's property, plaintiffs' advance an interesting argument. They contend that Mair's injuries were a foreseeable consequence of Guthrie and Darling's negligence in directing Mair into a position of danger. Therefore, the argument goes, even though Mair's injuries occurred on Penn Central's property, C & O should be held liable. Plaintiffs' argument rests on the premise that if an individual acts negligently towards someone on his property, he is liable for any injuries that occur to that person, even if the injuries

occur on someone else's property. It also assumes that C & O is liable because *respondeat superior* is applicable to this case.

Mair argues that *respondeat superior* applies because Guthrie and Darling were acting within the scope of their duty when they told Mair and his companions to go hop a train on Penn Central's property. Plaintiffs contend that Guthrie and Darling were authorized by C & O to eject trespassers from their property, and that in the course of ejecting Mair and his companions from the property, the employees acted negligently.

As we see it, if Guthrie did in fact tell Mair and his companions to go and jump a train on Penn Central property, then there would apparently be some negligence on his part. In Michigan, an employer may be liable for the tortious acts of an employee if done while the employee is acting within the scope of his employment. *Shinabarger v. Phillips*, 370 Mich. 135, 140, 121 N.W.2d 693, 695 (1963). The test for determining whether an employee is acting within the scope of his employment is whether the purpose of the service rendered by the employee is to further the employer's business. *Renda v. International Union, U.A.W.*, 366 Mich. 58, 95, 114 N.W.2d 343, 361 (1962). If it is, then the employee is operating within the scope of his employment even if he is negligent or disobeys orders as to the method of the execution of the duties. *Id.* at 95, 114 N.W.2d 343. In situations where the employee intentionally or recklessly commits a positive wrong that is beyond the scope of the employer's business, the employer cannot be held liable. *Barnes v. Mitchell*, 341 Mich. 7, 13, 67 N.W.2d 208, 210 (1960).

The Michigan Supreme Court has considered the applicability of the *respondeat superior* doctrine in circumstances similar to the facts of this case. In *Keating v. Michigan Cent. R.R. Co.*, 97 Mich. 154, 56 N.W. 346 (1893), the plaintiff, a seven-year old boy, was severely injured while attempting to board one of defendant's moving freight trains. A foreman on one of defendant's gravel trains had instructed plaintiff to get on one of the freight trains which would pass the boy's house. The foreman said, "Here comes this freight train; you can get on that. It will go slow by the house and you can jump off.... Get on the back car-caboose." In holding that the railroad was not liable for the statements made by its employee, the court reasoned:

> Can it be said that [the employee] was in the line of his duty, or acting within the scope of his employment, in the direction which he gave? No act required of him as foreman or agent of the defendant, no act done or thing omitted by him, or by the other servants of the company, in the prosecution of their work, caused plaintiff's injury. Neither the condition of the work, nor the manner of its doing, was the cause of the accident. To construct the side track was within the scope of [the employee's] employment, and doubtless any injury inflicted upon the plaintiff recklessly or negligently, in connection with any service which he was performing for the company, might be redressed in an action against the principal; *but the principal is not responsible for bad advice by its road-master or servants, whose duties do not include the giving of counsel or advice generally,* and when such advice relates to the conduct of another not connected with or relating to the business, with which the servant is at the time connected.

97 Mich. at 157, 56 N.W. 346 (emphasis added). See also *Chajnacki v. Dougherty*, 254 Mich. 296, 236 N.W. 789 (1931); *Stornelli v. Duluth, S.S. & A. Ry. Co.*, 193 Mich. 674, 160 N.W. 415 (1916).

In light of the above case law, we REVERSE the district court's judgment entered on the jury's verdict finding C & O liable for Andrew Mair's injuries. We also find it unnecessary to consider plaintiffs' appeal from the district court's order reducing their damage award.