NOT RECOMMENDED FOR PUBLICATION

File Name: 05a0047n.06

Filed: January 18, 2005

**Nos. 03-3792;03-3793;03-3804**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

CENTURY BUSINESS SERVICES, INC.,

    **Plaintiff,**

CENTURY PAYROLL, INC.,

    **Plaintiff-Appellee,**

v.

UTICA MUTUAL INSURANCE COMPANY

    **Defendant-Appellant,**

FIDELITY AND DEPOSIT COMPANY OF
MARYLAND,

    **Defendant-Appellant.**

                              /

**ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO**

BEFORE:    SUHRHEINRICH and CLAY, Circuit Judges; NIXON, District Judge. [*]

    **CLAY, Circuit Judge.** This consolidated insurance coverage dispute was filed in the United

States District Court for the Northern District of Ohio pursuant to diversity jurisdiction, 28 U.S.C.

§1332(a). In Case No. 03-3792, Defendant Fidelity and Deposit Company of Maryland ("Fidelity")

---

[*]The Honorable John T. Nixon, United States District Judge for the Middle District of
Tennessee, sitting by designation.

appeals the district court's award of prejudgment interest to Plaintiff Century Payroll, Inc. ("Century Payroll") and appeals the district court's order denying Fidelity's motion for judgment as a matter of law. In Case No. 03-3793, Defendant Utica Mutual Insurance Company ("Utica") appeals the district court's denial of Utica's two motions for summary judgment and its denial of Utica's motion for judgment as a matter of law. In Case No. 03-3804, Century Payroll cross-appeals the district court's determination that prejudgment interest owed by Fidelity began accruing on the date Fidelity was joined as a defendant in this case. For the reasons set forth below, we **AFFIRM** the decision of the district court.

**BACKGROUND**

*Substantive Facts*

**1.    Events leading to the insurance claims at issue in this case**

This case arises from Defendants' denial of Century Payroll's insurance claims for losses arising from the misdeeds of Ralph M. Daniel ("Daniel"), President of Century Payroll. Century Payroll, a wholly-owned subsidiary of Century Business Systems ("Century Business"), provides payroll-related services to financial and other companies. Daniel began "borrowing" money from Century Payroll's client liability account in October 1998. At that time, Daniel informed Century Payroll's controller, Robert St. Lawrence ("St. Lawrence") that he had borrowed money, and Daniel signed a promissory note at an interest rate of six percent per annum, which St. Lawrence regarded as competitive.

St. Lawrence left Century Payroll in February 1999, and Daniel hired Jennifer Duff ("Duff") to replace him. In September 1999, Daniel instructed Duff to write a check payable to him from the

client liability account, in the amount of $259, 580.30. Daniel also executed another promissory note to Century Payroll, which was witnessed by Duff. This promissory note was in the amount of $570,000, and was intended to cover the check Duff wrote at that time, as well as $300,000 Daniel had "borrowed" in February 1999.

At trial, Century Payroll's General Manager, Geoffrey Duke ("Duke") testified that he first became aware that Daniel had been borrowing money from Century Payroll when he was examining the company's account statements, also in September 1999. On September 24, 1999, Duke sent an email to Daniel asking whether this money was being used to cover his personal account. At that time, Daniel had borrowed $499,750 from Century Payroll's client liability account, and paid back $200,000 of that amount.

In the months that followed, Duff wrote Daniel eight more checks totaling $2,780,000. Daniel continued to sign promissory notes for these "loans." All told, between October 1998 and February 2000, Daniel borrowed $3,539,339.30 from Century Payroll's client liability account. In December 1999, he made a second and final repayment of $350,000, bringing the total amount repaid to $550,000. Following an internal investigation, Rob O'Byrne, a Vice President at Century Business, terminated Daniel's employment in May 2000. Daniel eventually was convicted of wire fraud in the United States District Court for the Northern District of Ohio.[1]

2. **The disputed policies**

---

[1]That conviction was affirmed on appeal by this Court. *United States v. Daniel*, 329 F.3d 480 (6th Cir. 2003).

Century Business entered into two successive insurance contracts with Utica which are relevant to this case. The first policy provided coverage of up to $1,000,000 from September 1998 to September 1999 . The second policy provided the same coverage for the period of September 1999 to September 2000. Both policies included an "Employee Dishonesty Coverage Form," which covered, among other things, money losses resulting from employee dishonesty.

Additionally, Century Business acquired a Commercial Crime Select Excess Insurance Policy from Fidelity, with several subsidiaries, including Century Payroll, as the named insured. The Fidelity excess policy provided for coverage under the terms of the underlying Employee Dishonesty Policy issued by Utica, for the period September 30, 1999 to September 30, 2000. The excess policy provided for no coverage until the $1,000,000 limit of the underlying 1999-2000 Utica policy was exhausted, and then for up to $4,000,000 for losses resulting from an employee's dishonesty.

On August 8, 2000, Century Business and Century Payroll submitted claims totaling $2,898,580.30, to both Utica and Fidelity. Utica denied those claims on October 23, 2000.

### Procedural History

Century Business and Century Payroll then filed suit against Utica on December 15, 2000. Count I of the complaint alleged that Utica was obligated under its policies with Century Business to reimburse Plaintiffs for $1,559,580 of an alleged $2,989,589 loss. These figures were based on a loss of $559,580 during the first policy period, ending September 30,1999, and a loss of $2,430,000 during the second policy period, of which Plaintiffs acknowledged Utica could be held responsible for only the $1,000,000 liability limit set under the policy. Count II of the complaint

4

charged that Utica's refusal to honor Plaintiffs' claims under the policy constituted bad faith and breach of contract entitling Plaintiffs to punitive damages.

Utica filed a motion for summary judgment on December 17, 2001.  Plaintiffs filed a cross-motion for partial summary judgment on the same day.  On February 5, 2002, the district court granted summary judgment to Utica with respect to Century Business on both counts of the complaint[2], and to Utica with respect to Century Payroll on Count II of the complaint.  The court rejected Utica's argument that Duke's discovery of Daniel's loans in September 1999 constituted discovery of Daniel's dishonest acts by corporate officers of Century Payroll and thereby cancelled the policy, on the grounds that Duke was not a corporate officer.  The court denied Century Payroll's motion for summary judgment, on the grounds that the question of whether Daniel acted with manifest intent to cause Century Payroll a loss, as required under the policy, was a significant question of fact that remained unresolved.

On February 21, 2002, a magistrate judge set the case for jury trial on July 30, 2002.  Following a pre-trial conference on June 18, 2002 at which counsel for Fidelity was present, Century Payroll moved for leave to file an amended complaint joining Fidelity as a new defendant to the lawsuit.  On July 9, 2002, the magistrate judge granted Century Payroll's motion and re-set the trial, for November 4, 2002.

In response to the amended complaint, on August 5, 2002, Fidelity filed an answer asserting several defenses  and a counterclaim seeking a declaratory judgment that Fidelity was not liable to

---

[2]Century Business has not appealed this disposition, leaving Century Payroll as the sole Plaintiff before the Court in this case.

Century Payroll for any losses sustained due to Daniel's conduct. Fidelity filed a motion for summary judgment on September 16, 2002, which was denied on October 23, 2002.

Opening statements were heard on March 5, 2003. One day earlier, Defendants filed a joint motion for judgment as a matter of law, pursuant to Federal Rule of Civil Procedure 50(a). They filed a second Rule 50(a) motion following the close of Plaintiff's presentation of evidence. The district court denied both 50(a) motions, and on March 7, 2003, the jury returned a verdict in favor of Century Payroll, against Utica and Fidelity in the amount of $2,780,000 under the policies providing coverage from September 1999 to September 2000, and against Utica in the amount of $759,330.30 under the policy providing coverage from September 1998 to September 1999.

On March 10, 2003, Century Payroll filed a motion for the award of prejudgment interest against Defendants at a rate of ten percent per annum from August 8, 2000, the date Century Payroll submitted a proof of loss statement to Defendants. On April 15, 2003, the district court issued a memorandum and opinion. The court awarded prejudgment interest to Century Payroll against Utica in the amount of $382,783.55, using as the accrual date the date on which Utica denied liability. The court awarded prejudgment interest to Century Payroll against Fidelity in the amount of $108,915.10, based on an accrual date of July 11, 2002, which is when Century Payroll added Fidelity as a party to the lawsuit.

On April 21, 2003, Century Payroll filed a motion for reconsideration of the accrual date set by the court for prejudgment interest owed by Fidelity. On April 25, both defendants again filed motions for judgment as a matter of law. All of those motions were denied in an order entered April 28, 2003.

On May 27, 2003, Fidelity filed a notice of appeal to this Court. On May 28 Utica followed suit, and the same day, Century Payroll filed a notice of cross-appeal from the portion of the final judgment setting the accrual date for prejudgment interest owed by Fidelity.

## DISCUSSION

I.  **Whether the district court erred in refusing to grant judgment as a matter of law to Defendants with respect to claims that the insurance policies were cancelled when Century Payroll's General Manager learned of Daniel's dishonest acts.**

a.  **Standard of review**

As explained in the discussion of the procedural history of this case, both defendants moved for summary judgment and then for judgment as a matter of law, twice pursuant to Federal Rule of Civil Procedure 50(a) and once, after the entry of judgment, pursuant to Rule 50(b). Under these circumstances, we review only the denial of the Rule 50(b) motion. *K & T Enters.*, *Inc.*, v. *Zurich Ins. Co.*, 97 F.3d 171, 174 (6th Cir. 1996).

In *K & T*, we explained the importance of distinguishing between Rule 50(b) motions which challenge the sufficiency of the evidence supporting the jury's findings, and Rule 50(b) motions based strictly on legal questions. In reviewing the former type of Rule 50(b) motion in a diversity case, we will apply the same standards used under the law of the forum state. In contrast, in cases such as this one, in which we consider the denial of a Rule 50(b) challenge to the trial court's resolution of a legal issue, our review is *de novo*. 97 F.3d at 176.

Finally, because our jurisdiction in this case is based on diversity of citizenship, pursuant to 28 U.S.C. § 1332, we apply the substantive law of the forum state, which in this case is Ohio.

*Jandro v. Ohio Edison Co.*, 167 F.3d 309, 313 (6th Cir. 1999), (citing *Mair v. C & O R.R.*, 851 F.2d 829, 832) (6th Cir. 1988); *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)).

### b.    The disputed policy clause

The dispute over this issue centers on provision D.2 of Utica's Employee Dishonesty Coverage Form, which states:

> **2. Additional Condition**
> **Cancellation as to Any Employee:** This insurance is cancelled as to any "employee:"
> **a.** Immediately upon discovery by:
>   **(1)** You; or
>   **(2)** Any of your partners, officers, or directors not in collusion with the "employee";
> of any dishonest act committed by that "employee" whether before of after becoming employed by you

Defendants argue that their policies were cancelled based on this provision in September 1999, when Duke, Century Payroll's General Manager, first learned of dishonest acts committed by Daniel. Under the terms of provision D.2, in order to succeed in this argument, Defendants must show that "you" should be read to include employees of Century Payroll, like Duke.[3] Furthermore, Defendants must demonstrate that Duke is *unambiguously* within the definition of "you", because Ohio law instructs that "[a] contract of insurance prepared and phrased by the insurer is to be construed liberally in favor of the insured and strictly against the insurer, where the meaning of the language is doubtful, uncertain, or ambiguous." *Moorman v.Prudential Ins. Co. of America*, 445

---

[3]Defendant Fidelity argues in its brief on appeal, for the first time, that Duke was an "officer" of Century Payroll, and thus subject to the second part of provision D.2. As this argument was not presented to the district court, we decline to review it. *Sigmon Fuel Co. v. Tennessee Valley Auth.*, 754 F.2d 162, 164 (6th Cir. 1985).

N.E.2d 1122, 1124 (Ohio 1983)(citing *Munchick v. Fidelity & Casualty Co.*, 209 N.E. 2d 167 (Ohio 1965)).

Ambiguity exists in an insurance contract where language used in that contract is "reasonably susceptible of more than one interpretation." *Santana v. Auto Owners Ins. Co*, 632 N.E. 2d 1308, 1311 (Ohio Ct. App. 1993)(citing *King v. Nationwide Ins. Co.*, 519 N.E. 2d 1380 (Ohio 1988)).  Plaintiff submits several compelling arguments that "you," in the Utica policy, is "reasonably susceptible" of a definition that does not encompass all employees of Century Payroll.

First, Plaintiff notes that if "you" includes all employees of Century Payroll, the second clause of the provision, which covers "any of your partners, officers, or directors not in collusion with the 'employee,'" is rendered superfluous.  Plaintiff also points to other policy provisions that use the word "you" in a manner suggesting that it cannot be read to mean all employees of Century Payroll.  Most persuasively, the policy includes a clause which asserts that Utica will not pay for "loss resulting from any dishonest or criminal act committed by you or any of your partners whether acting alone or in collusion with other persons."  Of course, if "you" means all employees of Century Payroll in that context, that provision would eviscerate the Employee Dishonesty Policy.

Ultimately, Plaintiff's arguments, though convincing, are unnecessary, as the Ohio Supreme Court has already determined that "you" is ambiguous when it is used in insurance contracts to refer to corporations.  *Westfield Ins. Co. v. Galatis*, 797 N.E. 2d 1256, 1264 (Ohio 2003) ("you" is "ambiguous where the policyholder is a corporation"), citing *King v. Nationwide Ins. Co.*, 519 N.E. 2d 1380 (Ohio 1988); *Scott-Pontzer v. Liberty Mutual Fire Ins. Co.*, 710 N.E. 2d 1116, 1119 (Ohio

1999)("the language in the Liberty Fire policy concerning the identity of 'insureds' is ambiguous").[4]

As noted above, we are required by Ohio law to construe ambiguity in the language of an insurance contract against the insurer and in favor of the insured. Thus, we conclude that "you," in the context of this insurance policy, did not include all employees of Century Payroll, and Duke's knowledge of Daniel's dishonest acts cannot be imputed to Century Payroll on that basis.

**II.    Whether the district court erred in refusing to grant judgment as a matter of law to Defendants with respect to the claim that Century Payroll failed to comply with "notice of loss" provisions.**

Defendant Fidelity contends that Century Payroll failed to comply with a provision of the policy dealing with "Duties in the Event of Loss," which informs the insured of what it must do "after you discover a loss or a situation that may result in loss of, or loss from damage to, Covered Property." As with the just-addressed argument, this claim depends on a reading of "you" to encompass employees of Century Payroll, specifically Duke. For the reasons stated in Part I of this opinion, we reiterate that "you," as used in this policy, is ambiguous, and we construe the policy in favor of the insured and against the insurer. Therefore, we affirm the district court's refusal to grant judgment as a matter of law to Defendants with respect to the claim that Century Payroll failed to comply with notice of loss provisions.

---

[4]Defendant Utica contends that *Scott-Pontzer* "affirmed that 'You,' as it appears in insurance policies, refers to employees of the corporation." Def. Utica Brief at 25. Utica is wrong. What *Scott-Pontzer* says is that "*it would be reasonable to conclude* that 'you,' . . . includes Superior's employees, since a corporation can act only by and through real live persons." 710 N.E. 2d at 1119 (emphasis added). *Scott-Pontzer* concludes that the "you" language is ambiguous, and thus construes it *against* the insurer to include employees. In contrast, in this case construing "you" against the insurer would mean excluding employees. (*Scott-Pontzer* was limited by the Ohio Supreme Court's decision in *Galatis*, in ways that are not germane to our discussion here).

**III.** **Whether Defendants' claim regarding prejudice to their subrogation rights has been waived.**

Defendants allege that their subrogation rights were prejudiced by Century Payroll's alleged failure to promptly notify them of Daniel's dishonest acts[5] and to do everything possible to secure its rights of recovery against Daniel. We do not reach the merits of this claim because both Defendants have waived this argument.

Utica did not raise this issue until its brief before this Court. As noted above, we decline to consider arguments not presented to the district court. *Sigmon Fuel Co.*, 754 F.2d at 164. Likewise, because Fidelity did not raise the issue until its Rule 50(b) motion[6], we will not review it. Judgment as a matter of law is not available to a party on an issue it has not raised prior to the submission of the case to the jury. *Amer. and Foreign Ins. Co. v. Bolt*, 106 F.3d 155, 160 (6th Cir. 1997).

**IV.** **Whether the district court erred in denying Defendants' motion for judgment as a matter of law on the issue of manifest intent.**

Defendant Utica contends that the district court erred in not granting judgment as a matter of law to Defendants because, according to Utica, Daniel did not act with "manifest intent" to cause a loss to Century Payroll, as required under the terms of the policy. Again, our review of the district court's decision is *de novo*. *H.C. Smith Invs., L.L.C. v. Outboard Marine*

---

[5]To the extent that this argument relies on attributing to Century Payroll Duke's knowledge of Daniel's dishonesty, it is without merit for the reasons discussed in Part I of this opinion.

[6]Fidelity attempts to argue before this Court that it raised the subrogation of rights issue for the first time not in its Rule 50(b) motion but in its answer to Century Payroll's amended complaint. Even a very generous reading of Fidelity's answer does not support this contention.

11

*Co.*, 377 F.3d 645, 650 (6th Cir. 2004), citing *Gray v. Toshiba Am. Consumer Prods., Inc.,* 263 F.3d 595, 598 (6th Cir.2001).  Because this is a challenge to the sufficiency of the evidence supporting the jury's findings, and the basis of our jurisdiction in this case is diversity of citizenship, we apply the same standards used under the law of the forum state, Ohio.  *K & T Enterprises*, 97 F.3d at 176.  Therefore, we "must construe the evidence adduced at trial and all reasonable inferences arising therefrom, most strongly in favor of the non-moving party." *Fischer v. Dairy Mart Convenience Stores, Inc.*, 602 N.E. 2d 1204, 1208-09 (Ohio Ct. App. 1991)(citations omitted).

Utica argues that because Daniel signed promissory notes for all of the money he "borrowed" from Century Payroll's client liability account, it is clear that he intended to repay it. According to Utica, "Daniel did not have to execute these Promissory Notes – he chose to do so because he wanted to make it clear to Payroll and its personnel that he was only borrowing the money."  Def. Utica Brief at 49.  This is certainly a plausible understanding of the evidence. However, we agree with the district court that it is equally plausible that the signing of the promissory notes was a sham, and that Daniel merely wanted to make it *appear* to Century Payroll and its personnel that he was only borrowing the money.  Because both of these inferences are reasonable, we are required by Ohio law to find in favor of the non-moving party, and we conclude that the district court did not err in denying Utica's motion for judgment as a matter of law on the basis that Daniel did not exhibit the requisite "manifest intent" to cause Century Payroll a loss.

12

**V.      Whether the district court erred in determining that a repayment made by Daniel should be credited against the loss sustained during the second policy period rather than the first policy period.**

Defendant Utica argues that the district court erred in ruling that a $350,000 repayment made by Daniel to Century Payroll in December 1999, during the second policy period, should be used to reduce the loss sustained in the second policy period, rather than the first.  Essentially, Utica appears to contend that the $350,000 that was repaid was part of the money "borrowed" during the first policy and not the second.  We are unclear as to how Utica can know this, given the fungible nature of money.

Further, we are persuaded by the district court's reasoning that because the policies covered loss sustained through "acts committed or events occurring during the Policy Period," repayments ought to be credited to the policy period in which they were made.  In our view, this is an entirely sensible interpretation of the policy.  During the second policy period, Daniel took $2,780,000 from Century Payroll, and paid Century Payroll $350,000.  We fail to see any error in the determination that Century Payroll therefore lost $2,430,000 as a result of "acts committed or events occurring" during the second policy period.

**VI.     Whether the district court abused its discretion in awarding pre-judgment interest to Century Payroll against Fidelity with an accrual date of July 11, 2002, the date that Fidelity was joined as a party in this case.**

Fidelity argues that the district court's award of prejudgment interest against Fidelity is contrary to the terms of the Excess Policy and Ohio law and should be set aside.  Century Payroll, in turn, cross-appeals the district court's determination that the accrual date for that

prejudgment interest award should be set at July 11, 2002, when Fidelity was joined as a party in this case, rather than on August 8, 2000, when the proof of loss was filed.

We review a district court's award of prejudgment interest under an abuse of discretion standard. *Clay v. Ford Motor Co.*, 215 F.3d 663, 672 (6th Cir. 2000); *Anderson v. Whittaker Corp.*, 894 F.2d 804, 809 (6th Cir. 1990). We will not reverse the district court's decision unless we have "a definite and firm conviction that the trial court committed a clear error of judgment." *Paschal v. Flagstar Bank*, 297 F.3d 431, 434 (6th Cir. 2002), quoting *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989)**.**

Fidelity principally relies on the terms of its excess policy to argue that an award of prejudgment interest against it is precluded in this case. As the district court noted, this argument appears to have some merit. The relevant language of the excess policy states that "[c]overage under this policy shall attach . . . only after the issuers of the Underlying Insurance have paid or have been held liable to pay the full amount of limits of insurance of the Underlying Insurance."

However, this provision of the policy appears to be in conflict with Ohio law. As this Court has previously explained, under Ohio Revised Code §1343.03(A), a plaintiff who obtains a favorable judgment against an insurer has a right to prejudgment interest as a matter of law, and the trial judge must grant it, although she or he has great discretion in determining the date of accrual. *Lincoln Electric Co. v. St. Paul Fire and Marine Insurance*, 210 F.3d 672, 693 (6th Cir. 1999).

14

Our review has not uncovered any Ohio cases explaining whether parties may contract out of the mandatory prejudgment interest imposed by §1343.03(A). Given the lack of clarity on this issue, we cannot say that the district court committed a clear error of judgment in awarding prejudgment interest. We therefore decline to reverse the district court's determination that prejudgment interest should be awarded in this case.

Likewise, we cannot say that the district court abused its discretion in setting the accrual date for prejudgment interest as the date on which Fidelity was joined as a party rather than as the date on which Century Payroll first submitted its proof of loss statement. Ohio law vests the trial court with great discretion in determining the date of accrual for prejudgment interest. *See Landis v. Grange Mutual Insurance Co.*, 695 N.E. 2d 1140, 1142 (Ohio 1998) ("whether the prejudgment interest in this case should be calculated from the date coverage was demanded or denied, from the date of the accident, from the date at which arbitration or damages would have ended . . . or some other time . . . is for the trial court to decide").

In this case, the district court determined that prejudgment interest against Fidelity should be imposed starting from the date Fidelity was joined as a party, because until that point Century Payroll anticipated reaching an agreement with Fidelity which would not have resulted in any payment of prejudgment interest. Again, we do not regard this decision by the district court as an abuse of discretion, and decline to disturb the district court's determination that the appropriate accrual date for the prejudgment interest award against Fidelity was July 11, 2002.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

15